## CHICAGO, R. I. & P. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. August 6, 1915.)

No. 2228.

1. MASTER AND SERVANT ☞13—HOURS OF SERVICE—STATUTORY REGULATION —RAILROAD TELEPHONE OPERATORS.

Where it was the regular duty of a switchman stationed in defendant's freight yard to telephone the towerman, in charge of an interlocking crossing with another road, that defendant's passenger train was coming, in order to permit the towerman to hold freight trains on the other road, whereby delay to defendant's passenger trains was obviated, such communication was an order transmitted by the switchman, within Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (Comp. St. 1913, § 8678), limiting the hours of service of railroad employés who transmit orders pertaining to train movements by telephone, etc.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.]

2. MASTER AND SERVANT ☞13—RAILROAD TELEPHONE OPERATORS—STATUTE— HOURS OF SERVICE—ORDERS INCLUDED.

The provisions of section 2 are not confined to orders whose violation might result in some accident, but extend to orders looking to greater regularity in passenger service, since the statute aims at general efficiency and promptness of service, as well as at safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.]

3. MASTER AND SERVANT ☞13—RAILROAD TELEPHONE OPERATORS—HOURS OF SERVICE—"OPERATOR, TRAIN DISPATCHER, OR OTHER EMPLOYÉ"—CONSTRUCTION.

The classification "operator, train dispatcher, or other employé who by use of," etc., in section 2 of the act, does not confine the provisions of the section, by the application of the ejusdem generis rule of construction, to employés whose primary and principal duty it is to transmit, etc., but extends to those who ordinarily and habitually do so; the proper rule of construction, in view of its remedial character, and in spite of its penal

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

nature, being to interpret the language of the act according to its fair and obvious meaning.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ⊕═13.

Hours of service of employés, see note to United States v. Houston Bell & T. Ry. Co., 125 C. C. A. 485.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Action by the United States against the Chicago, Rock Island & Pacific Railway Company to recover certain penalties under the Hours of Service Act. From a judgment for the United States, defendant brings error. Affirmed.

By this writ of error it is sought to reverse a judgment rendered on a directed verdict and based on six several violations of the Hours of Service Act (34 Stat. 1415). Section 2 of the act, after making it unlawful for a common carrier subject to the act to permit employés to remain on duty longer than 16 hours, continues as follows: "Provided, that no operator, train dispatcher, or other employé who by use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day," except in certain contingencies not now in question. Section 1 defines "employés" as follows: "The term 'employés' as used in this act shall be held to mean persons actually engaged in or connected with the movement of any train."

Violation of the statute is conceded if the employés in question come within the class designated in the proviso and if the telephone communications made by them are included within the word "orders" as used in the statute. Defendant's freight yards were located on the west side of its main line at about 124th street. Trains entered from the south by a switch connected with the east-bound main line and left by means of a switch connected with the west-bound main line. The employés in question were stationed· at the location of the two switches; they were the switch tenders; their switch shanty was just east· of the east-bound main line; in this there was a telephone, one of an eight party line. Some four miles north of this point, at Gresham, the Baltimore & Ohio Railroad crossed defendant's main line. At this crossing there was an interlocking plant. When the tower leverman threw his lever in order that defendant's train might cross, he thereby operated the Baltimore & Ohio derail, and vice versa, so that it was physically impossible for the trains to·come in contact at the crossing. Defendant's passenger trains coming north into the city were, however, frequently held up at the crossing if it was blocked to let a Baltimore & Ohio freight train pass. To obviate these delays, it was part of the duty of the switchmen in question to telephone the towerman at the crossing that defendant's passenger train was coming. Then, until the passenger train passed the crossing, the Baltimore & Ohio freight train would not be allowed to cross.

A. B. Enoch, of Chicago, Ill., for plaintiff in error.

Charles F. Clyne and Frederick Dickinson, both of Chicago, Ill., and Philip J. Doherty, of Washington, D. C., for the United States.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). [1, 2] 1. Defendant contends that what the switch tenders did in relation to

the towerman was to impart information, not to transmit orders. It concedes, in accordance with the decisions in United States v. Houston B. & T. Ry. Co., 205 Fed. 344, 125 C. C. A. 481 (C. C. A., 5th Circuit) and M. P. Ry. Co. v. United States, 211 Fed. 893, 128 C. C. A. 271 (C. C. A., 8th Circuit), that orders are not confined to technical written train orders; that any specific direction or instruction which a subordinate is bound to obey would be an order; but it urges that only such orders "the violation of which might result in some accident" fall within the purpose and therefore within the scope of the statute.

Unquestionably, the important object of the statute was to conserve the safety of the traveling public and of railroad employés; the relation between industrial fatigue and inefficiency was recognized; the statute aims to obviate the latter by checking the former. Not merely safety, but general efficiency, promptness of service is thereby promoted. Concededly, greater regularity in the passenger service is secured, if the defendant's trains are no longer slowed down and held up at the crossing. Orders designed to accomplish even this result would, therefore, be within the purview of the act.

But who can say that the violation of any order pertaining to or affecting train movements *might* not result in some accident? That other measures obviated the possibility of a collision at the Gresham crossing is immaterial, for surely regularity. of service at that point might well prevent an accident at some other point. The information telephoned by the switchman was equivalent to a direction to the leverman to let the oncoming passenger train pass; an order, originated, it is true, by some superior officer, not by the switchman, but none the less an order transmitted by him.

[3] 2. The principal contest is whether the words "other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives or delivers orders pertaining to or affecting train movements" are to be limited by the application of the ejusdem generis rule of construction, to a class of which operators and train dispatchers are representatives. In a case practically identical with the instant case, this construction has been adopted. M. P. Ry. Co. v. United States, supra; contra, United States v. C., C., C. & St. L. Ry. Co. (oral decision Dec. 12, 1911, United States District Court, Southern District of Ohio; writ of error dismissed by stipulation Oct. 15, 1912). The contrary view was also assumed to be correct in the Houston Case, supra, in reference to towermen. The class is held in the M. P. Ry. Case to be those employés whose duties primarily involve the use of the telegraph and telephone in connection with such orders.

This decision was followed in United States v. Florida East Coast Ry. Co., 222 Fed. 33, —— C. C. A. —— (C. C. A., 5th Circuit, Judge Walker dissenting), in the case of a train conductor, partly on the ground that his "primary and principal duty" did not require him to operate telegraphic instruments and telephones for transmitting such orders, but also on the further ground that stopping at a station to transmit or receive an order affecting his immediate train is a mere incidental service, not done in the fixed place, held to be implied in the phrase "to remain on duty for a longer period, etc., *in* all towers, offices, places and stations."

It is unnecessary to consider this last point because these employés were regularly stationed at the shanty in which the telephone was located; their duty to transmit the information by telephone to the Gresham leverman was not incidental, but regular and habitual. It was not, however, in any sense their principal and primary duty; that was to attend to the Blue Island freight yard switches.

We cannot, however, agree that the words "other employé who by the use," etc., transmits such orders, are to be qualified by an implied limitation to those whose primary and principal duty is thus described. The remedial purpose of this act, to protect human life and to promote railroad efficiency, demands that despite its penal character its provisions shall be construed and the intent of Congress found from the language actually used, interpreted according to its fair and obvious meaning. Congress may well have deemed it unsafe to permit employés whose duty it is, not primarily or principally, but ordinarily and habitually, to transmit such important orders, and in doing so to exercise whatever measure of skill, care, alertness, and attention the use of either telegraph or telephone requires, to work 16 hours, however simple or nonfatiguing their ordinary tasks may be.

Furthermore, the class that includes only those whose principal duty is to transmit such orders by telegraph or telephone does not include all who concededly are within the proviso; an operator or train dispatcher may also be a station agent, and his primary and principal duties may be in the latter capacity. If, unlike United States v. Mescall, 215 U. S. 26, 30 Sup. Ct. 19, 54 L. Ed. 77, the particular words, "operators and train dispatchers," do not exhaust the class and thus make the rule of ejusdem generis inapplicable, the only all embracing designation covering those concededly within the proviso, is an employé who ordinarily and habitually uses the telegraph or telephone for the purposes stated. Defendant's employés here in question come within this class.

The judgment will therefore be affirmed.

