### UNITED STATES v. ATCHISON, T. & S. F. RY. CO.

(District Court, N. D. Illinois, E. D.   April 19, 1924.)

#### No. 33879.

**Master and servant ⚷☞13—Yardmasters, directing train movements, "employ-
ees," within hours of service statute.**

Yardmasters, who had general direction of all train movements within
yard limits and used telephone therefor, as part of their usual duties,
are "employees" delivering orders pertaining to train movements, within
Act March 4, 1907, § 2 (Comp. St. § 8678), limiting hours of service.

[Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Employee.]

At Law. Action by the United States against the Atchison, Topeka
& Santa Fé Railway Company. Judgment for the United States.

Edwin A. Olson, U. S. Atty., of Chicago, Ill., Mary D. Bailey, Asst.
U. S. Atty., of Batavia, Ill., and M. C. List and J. S. Hawley, Sp.
Asst. U. S. Attys., both of Washington, D. C.

Homer W. Davis and John G. Drennan, both of Chicago, Ill., for defendant.

CLIFFE, District Judge. This is an action brought by the United States of America against the defendant railway company. The declaration charges six several violations of the Act of Congress known as "An act to promote the safety of employees and travelers upon railroads by limiting the hours of service of employees thereon," approved March 4, 1907 (34 Statutes at Large, 1415 [Comp. St. §§ 8677–8680]). Section 2 of the act (Comp. St. § 8678), after making it unlawful for a common carrier subject thereto to permit employees to remain on duty longer than 16 hours continuously, provides:

"That no operator, train dispatcher, or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day."

The stipulation filed herein shows that H. F. McCollum, the yardmaster of defendant, mentioned in counts 4, 5, and 6, made a memorandum of the substance of certain conversations he had over the telephone at Corwith yard on July 7, 8, and 9, 1921, and that McCollum's memorandum was used to refresh his recollection, and the contents thereof was substantially adduced into the evidence. Said memorandum discloses the fact that the circumstances surrounding the actings and doings of Bray, the night yardmaster, were exactly the same as those surrounding McCollum. By stipulation of the parties, jury was waived, and the case submitted to the court.

In the language of a well-considered case (C., R. I. & P. Ry. Co. v. United States, 226 Fed. 29, 141 C. C. A. 137):

"Unquestionably, the important object of the statute was to conserve the safety of the traveling public and of railroad employees; the relation between industrial fatigue and inefficiency was recognized; the statute aims to obviate the latter by checking the former. Not merely safety, but general efficiency, promptness of service is thereby promoted."

And in its desire to promote the safety of employees and travelers, Congress prescribed the maximum number of hours that certain railroad employees might work, and the minimum amount of rest they must have. The term "employees," as used in the act, refers to those persons actually engaged in or connected with the movement of any train. Section 1. Two classes of employees were intended in the act: (a) Employees who actually move trains, or are actually connected with the actual movement, such as engineers, firemen, conductors, brakemen, and switchmen; and (b) employees who use the telephone to direct the movement of trains, or through whom trains are so directed, such as train dispatchers, operators, switch tenders, and yardmasters. The first named class are limited to 16 hours in a 24-hour period, either continuous or in the aggregate; while those who direct train movements, or through whom such directions are dispatched, reported, transmitted, received, or delivered, are limited to 9 or 13

hours' service, depending upon whether or not the office is continuously operated night and day or a daytime office only. It is admitted that the Corwith office was a continuously operated office, and McCollum's service, as well as that of the Night Yardmaster Bray, was limited to 9 hours. The only question is whether, during the 12 hours Bray was on duty, he used the telephone to dispatch, report, transmit, receive, or deliver orders "pertaining to or affecting train movements."

The evidence as to several kinds of messages or orders that McCollum and Bray transmitted over the telephone, it seems to me, tells the story without any question. Certain rules, designated as 521 and 522, provide in effect that "all trains or engines without trains will be under the control of the yardmaster, and all employees in trains or engines will be subject to his instructions," and that he (the yardmaster) "is responsible for the prompt movement of cars, the proper position of the switches, and the expeditious dispatch of trains within the limits of the yard." Outside of the yards on the main lines these trains are directed by the train dispatchers, and, as has been well said in one of the briefs filed herein:

"It will thus be seen that the expeditious main line road movements may be advanced, handicapped or retarded by the work of the Corwith yardmasters."

The evidence as to what was actually done by means of the telephone in regard to the movement of trains shows without question in my mind that the yardmasters had the general direction of all train movements within the yard limits, and that the use of the telephone by the yardmaster is not occasional or exceptional, but is indeed a part of his usual duties.

From a careful consideration of the entire record, and of the testimony adduced, it is my opinion that this record shows a plain violation of the statute; and it is therefore ordered that judgment be entered against the Atchison, Topeka & Santa Fé Railway Company, defendant herein, for the sum of $600 and costs of suit.