ATCHISON, T. & S. F. RY. CO. v. UNITED
STATES.*

(Circuit Court of Appeals, Seventh Circuit.
November 26, 1924.)

No. 3475.

**1. Master and servant ⚖️13—Yardmaster directing train movements held "operator, train dispatcher, or other employee," within Hours of Service Act.**

Yardmaster, in charge of switching and movement of trains in railroad yard, who used telephone for giving and receiving instructions, was "operator, train dispatcher, or other employee," within Hours of Service Act, § 2 (Comp. St. § 8678).

**2. Master and servant ⚖️13—Telephone communications by yardmaster as to train movement held "orders," within Hours of Service Act.**

Communications between yardmaster and towerman as to movement of trains, which recipient was not at liberty to ignore, *held* "orders," within Hours of Service Act, § 2 (Comp. St. § 8678); such "orders" not being limited to orders issuing from train dispatcher's office, nor to written orders, but they may be given by wave of lantern or by change of light in signal station.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Order.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

The Atchison, Topeka & Santa Fé Railway Company was convicted of violating Hours of Service Act, § 2 (298 F. 549), and it brings error. Affirmed.

Homer W. Davis and E. C. Craig, both of Chicago, Ill., for plaintiff in error.

M. C. List, of Washington, D. C., for the United States.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Plaintiff was convicted of violating section 2 of the Hours of Service Act (34 Stat. 1415 [Comp. St. § 8678]). The material portions of the act, so far as this case is concerned, read as follows:

"Provided, that no operator, train dispatcher, or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day."

Two questions, the answers to which are

*Certiorari granted 45 S. Ct. 507, 69 L. Ed —.

determinative of liability, are: (a) Was defendant's yardmaster an "operator, train dispatcher or other employee," within the meaning of the statute? (b) Were the telephone messages that he received or transmitted "orders," within the meaning of the statute?

[1] The facts are not involved or controverted. The yardmaster in charge of the switching and movement of cars in the Chicago yards communicates with the Corwith towerman, a few miles distant, by telephone. The towerman's duties are various, but those material to this case are limited to those wherein he and the yardmaster coöperated in the movement of trains.

When the towerman wanted to send a train into the yards, he 'phoned the yardmaster over a wire used for that purpose and so informed him. If the tracks in the yards were sufficiently clear to admit the entry of the train, the yardmaster would reply, "Let her come." If the tracks in the yard were full, the yardmaster would so advise the towerman, or, as illustrated in the record, he would say, "Let her follow up No. 39." In sending out trains from the yards a similar practice prevailed. The yardmaster would advise the towerman over the 'phone that he had a train "made up" ready to "go out." The towerman would reply, "Let her come," or "Hold her until I get No. — out of the way," depending upon the condition of the tracks outside the yards, etc.

Question (a) above stated must be answered in the affirmative, on the authority of Chicago, Rock Island & P. Ry. Co. v. United States, 226 F. 27, 141 C. C. A. 135; Chicago & Alton R. R. Co. v. United States, 244 F. 945, 157 C. C. A. 295; Chicago & Alton R. R. Co. v. United States, 247 U. S. 197, 38 S. Ct. 442, 62 L. Ed. 1066. The holding of these cases is to the effect that the rule of ejusdem generis does not apply to the construction of the words of this statute.

[2] The real controversy is over question (b) heretofore stated. The term "order" has been defined in United States v. H. B. & T. Ry. Co., 205 F. 344, 125 C. C. A. 481, and with the conclusions there reached we agree. "Orders," as used in this statute, should not be limited to train orders issuing from the train dispatcher's office. Neither should the term be restricted to orders reduced to writing. Orders may be given by one authorized so to do merely through the wave of a lantern, the movement of arms, or by the change of light in a signal station.

There is a difference, as counsel for plaintiff in error points out, between giving orders and imparting information. This may be well illustrated in a switching operation in the night. The brakeman who makes the coupling may give information to the conductor by the swinging of his lantern. The conductor will then give a somewhat similar lantern signal to the engineer. Both of these signals are informative, but one is purely so, while the other is primarily an order.

The testimony in the present case does not permit of a conclusion which recognizes the communications that passed between the towermen and switchmen merely as information. The communications that were received or delivered over the telephone were "orders," which the receiving party was not at liberty to ignore. They dealt with the movement and operation of trains. Their form—whether in the nature of a command or worded as a request—is not at all determinative of the question.

Our decision is based upon the conclusion we have reached respecting the nature and necessary effect of the directions which passed between these two employees of the company. We think they were "orders," within the meaning of the statute.

The judgment is affirmed.