## ATCHISON, TOPEKA & SANTA FE RY. CO. *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 273. Argued Nov. 19, 20, 1925.—Decided November 30, 1925.

The provision of the Hours of Service Act, "that no operator, train dispatcher or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours," etc., does not apply to a yardmaster, under circumstances described in the opinion. P. 267.

3 Fed. (2d) 138, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals which affirmed a judgment for penalties, recovered

from the Railroad by the United States in a prosecution under the Hours of Service Act. See 298 Fed. 549.

*Mr. Edward C. Craig*, with whom *Messrs. Homer W. Davis, John G. Drennan, Nelson J. Wilcox* and *J. A. Connell* were on the brief, for petitioner.

*Mr. Blackburn Esterline*, Assistant to the Solicitor General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is an action brought by the United States to recover penalties for alleged violation of the Hours of Service Act of March 4, 1907, c. 2939, § 2; 34 Stat. 1415. The case was tried by a Judge under a stipulation waiving a jury. Rev. Stats. §§ 649, 700. He found the defendant railroad company liable, subject to an exception to his refusal to rule that there was no evidence to warrant a recovery. The facts were not in dispute and the decision turned on the Judge's view of the law. 298 Fed. 549. His judgment was sustained by the Circuit Court of Appeals. 3 Fed. (2d) 138. The material part of the statute is: "that no operator, train dispatcher, or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day." Two yardmasters were kept on duty for twelve hours each, by the railroad company in its Corwith Yard, Chicago, and the question is whether upon the statement of their duties they fell within the Act, bearing in mind that "The purpose of the statute is to promote safety in operating trains by preventing the excessive mental and physicial strain which usually results from remaining too

long at an exacting task." *Chicago & Alton R. R. Co.* v. *United States,* 247 U. S. 197, 199, 200.

The Corwith Yard lies to the South of the defendant's road, which runs East and West. Between the Yard and the road, and parallel to the latter, runs the road of the Chicago & Alton Railroad, which must be crossed by cars coming from or going to the defendant's tracks to or from the Yard. These crossings are controlled from a tower on the Chicago & Alton's line. When cars of either road seek to enter the Yard the tower man generally telephones to the yardmaster to find out whether he is in condition to receive them, and when cars are to go out the yardmaster telephones to the tower man to know if they can pass; but the yardmaster has no authority over the tower man and his telephone either way is not conclusive of the tower man's action. Conversely the tower man has no authority over him.

The yardmaster's duties extend to the breaking up and making up of trains, the prompt movement of cars, and general charge of the Yard. The telephoning, although a part of them, was an incidental part only, and a small one. Twenty-four calls a day seems a too liberal estimate. The messages were not orders, although they generally would govern the decision of the tower man. His decision was not obedience to any authority of or represented by the yardmaster. The movements that the messages affected were not of the kind that require the greatest solicitude, even when they were train movements, which, of course, was not always the case. The office hardly could be described as 'continuously operated', when the yardmaster was not in it much more than half the time, but was about the Yard attending to other things. Taking all the facts into account we are of opinion that the employment of the yardmaster for more than nine hours was not within the evil at which the statute was aimed and that the ruling to the contrary was wrong.

*Judgment reversed.*