The **UNITED STATES** of America, Plaintiff,

v.

**ALABAMA, TENNESSEE AND NORTH-ERN RAILROAD COMPANY,** Defendant.

Civ. A. No. 3506–64.

United States District Court
S. D. Alabama, S. D.

April 4, 1966.

---

Vernol R. Jansen, Jr., U. S. Atty.,
D. Broward Segrest, Asst. U. S. Atty.,
Mobile, Ala., for plaintiff.

William H. Armbrecht, Jr., and Broox
G. Holmes, of Armbrecht, Jackson, &
DeMouy, Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS,
District Judge.

Plaintiff sues for $3,000 in penalties
for violations of the Hours of Service
Act, 45 U.S.C. Secs. 61–64. Plaintiff
charges that the defendant permitted
telegraph station operators to remain on
duty for a period of time in excess of
the statutory maximum.

The defendant operates a telegraph
station in Mobile, Alabama. The gov-
ernment charges violations on March 5,
April 8, April 13, April 25, May 9, and
May 16, 1964. The essence of the gov-
ernment's allegation is that the defend-
ant's station was in operation as a "day
and night station" at that time. During
the days in question, the defendant op-
erated the station with one employee on
duty for periods of more than nine yet
less than thirteen hours. The statute
provides that no telegraph operator may
work more than nine hours in any
twenty-four hour period, if the station
is one used in the day and night time.
If the station is of the daytime class, the
operator may not work more than thir-
teen hours in any twenty-four hour
period.

The Interstate Commerce Commission
in ruling 287(g) of March 8, 1908, dis-
tinguished between the daytime class
and day-and-night class of stations. Sta-
tions operated only in the daytime "re-
fers to stations which are operated not
to exceed thirteen hours in a twenty-four
hour period."

The point of contention in this case
is whether or not the station at Mobile
was of the daytime class on the days
in question. It is not disputed by the
government that no employee remained
on duty for a period in excess of thirteen
hours. It is the government's claim that
the station was of the day-and-night
class and therefore the maximum tour of
duty for an operator would be nine hours.
As has been stated, a daytime station is
one that does not exceed thirteen hours
of operation in a twenty-four hour pe-
riod. The government has adopted a
method of computation of the twenty-

four hour period whereby the station actually was in operation for more than thirteen hours. The defendant contends that the time of operation must be computed from the time the station's sole operator commenced his daily shift. Using this method of computation, the station ceased operation before thirteen hours of actual operating time had elapsed.

■ Before deciding which method of computation should be used, it is necessary to review the purpose of the statute. The purpose of the limitation of hours of service is to promote safety in the operation of trains by preventing excessive mental and physical strain which usually results from remaining at an exacting task. United States v. Baltimore & O. R. R. Co., 45 F.Supp. 623 (D.C.Md. 1942). See also Atchison, T. & S. F. Ry. v. United States, 269 U.S. 266, 46 S.Ct. 109, 70 L.Ed. 268 (1925); and Chicago & A. R. R. Co. v. United States, 247 U.S. 197, 38 S.Ct. 442, 62 L.Ed. 1066 (1918) The exception created for the daytime class of station, whereby an employee can work a thirteen-hour shift, was probably a necessary practical solution to the problem of staffing the station which is not continuously in use. It would be harsh to limit the amount of time on duty to a period of nine hours when there is actually little more than nine hours' work to be done.

The method-of-computation question has arisen before in interpretations of this statute. The phrase "in any twenty-four hour period," as used in the statute, appears to be directed toward preventing an employee from exceeding the maximum time in any twenty-four hours, regardless of how computed. "To construe the indefinite 'any twenty-four-hour-period' to import a definite 'the twenty-four-hour period commencing with the beginning of the daily shift,' a point not selected by Congress but by the carrier, would do violence to the

language" (of the statute). United States v. Northern Pac. Ry., 6 F.Supp. 278, 279 (D.C.Mont.1934). See also United States v. Atlanta Terminal Co., 30 F.2d 109 (D.C.Ga.1929). Contra, United States v. Missouri Pac. Ry., 244 F. 38 (8th Cir. 1917).

■ However, it must be noted that in these cases, the issue before the court was whether or not the employee had exceeded nine hours of work in twenty-four hours. The character of the station as being one of the day-and-night class was not disputed. Therefore, it is possible that the standards set for computation of number of actual hours worked may not be applicable to computation of the number of hours that a railroad facility is in use. The evil to be remedied is excessive labor by employees which makes them dangerous to themselves and the public. The phrase "any twenty-four hour period" is not used with reference to computation of class of station, and this should not be read into the statute. If the government disregards shift changes and standards of that nature in determining how long a facility has been in use over a twenty-four hour period, it is applying the standards applicable to the use of human labor. Congress apparently was not motivated by a concern for the overuse of railroad equipment, but rather was anxious to secure safe and careful employees. The standards for computing overwork would have been applicable in this case had the allegation that this was a day-and-nighttime station been coupled with a charge that the operator on duty had worked for more than thirteen hours. However, there is no such claim in this case. Computing the hours of use of the facility from the time the sole operator for the day commenced his shift, as logic requires, there is no proof that the facility was in use for more than thirteen hours in a twenty-four hour period, and the defendant is entitled to judgment.