221 U.S. 612 (1911)
BALTIMORE AND OHIO RAILROAD COMPANY
v.
INTERSTATE COMMERCE COMMISSION.
No. 222.
Supreme Court of United States.
Argued April 17, 18, 1911.
Decided May 29, 1911.
APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.
*613 Mr. Frederic D. McKenney, with whom Mr. John G. Johnson and Mr. Hugh L. Bond, Jr., were on the brief, for appellant.
The Solicitor General for the appellee.
MR. JUSTICE HUGHES delivered the opinion of the court.
This is a bill in equity to annul an order made by the Interstate Commerce Commission on March 3, 1908, and for injunction. The order required the carriers within the provisions of the act of Congress of March 4, 1907, chapter 2939, 34 Stat. 1415, to make monthly reports, under oath, showing the instances where employes subject to that act had been on duty for a longer period than that allowed. The statute, entitled "An act to promote the safety of employes and travelers upon railroads by limiting the hours of service of employes thereon," is set forth in the margin.[1]
*614 By stipulation there were introduced into the record additional instructions issued by the Commission under date of August 15, 1908. These prescribed new forms, and also a separate form of oath for use in case there had been no excessive service; and it was further directed that reports of hours of service of the employes described should be made by the secretary or similar officer of the carrier.
It was agreed that a number of like suits brought by other carriers should abide the final disposition of this cause and that meanwhile the reports should not be required.
The bill alleged that the purpose of the Commission in *615 making the order was to secure from carriers evidence of infractions of the law in order that suits might be brought to recover penalties; that, even if this were not the purpose, the result of the requirement would be the same, because of the provision that the Commission should lodge with the proper district attorneys information of the violations coming to its knowledge; and that this compulsory disclosure, both as to the corporation itself and as to the officers concerned in such violations, was repugnant to the Fourth and Fifth Amendments of the Constitution of the United States. It was also alleged *616 that the Commission was without authority to make the order, either under the provisions of the act or otherwise.
A demurrer for want of equity was sustained, and the complainant appeals.
First. Although the question was not specifically raised by the bill, it is now contended that the statute is unconstitutional in its entirety and therefore no action of the Commission can be based upon it. It is said that it goes beyond the power which Congress may exercise in the regulation of interstate commerce; that while addressed to common carriers engaged in interstate transportation by railroad to any extent whatever, its prohibitions and penalties are not limited to interstate commerce, but apply to intrastate railroads and to employes engaged in local business.
The prohibitions of the act are found in § 2. This provides that it shall be "unlawful for any common carrier, its officers or agents, subject to this Act to require or permit any employe subject to this Act to be or remain on duty" for a longer period than that prescribed. The carriers and employes subject to the act are defined in § 1 as follows:
"That the provisions of this Act shall apply to any common carrier or carriers, their officers, agents, and employes, engaged in the transportation of passengers or property by railroad in the District of Columbia or any Territory of the United States, or from one State or Territory of the United States or the District of Columbia to any other State or Territory of the United States or the District of Columbia, or from any place in the United States to an adjacent foreign country, or from any place in the United States through a foreign country to any other place in the United States. The term `railroad' as used in this Act shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any common carrier operating a railroad, *617 whether owned or operated under a contract, agreement, or lease; and the term `employes' as used in this Act shall be held to mean persons actually engaged in or connected with the movement of any train."
No difficulty arises in the construction of this language. The first sentence states the application to carriers and employes who are "engaged in the transportation of passengers or property by railroad" in the District of Columbia or the Territories, or in interstate or foreign commerce. The definition in the second sentence, of what the terms "railroad" and "employes" shall include, qualify these words as previously used, but do not remove the limitation as to the nature of the transportation in which the employes must be engaged in order to come within the provisions of the statute. If the definition, in the last part of the sentence, of the words used in the first part be read in connection with the latter the meaning of the whole becomes obvious. The section, in effect, thus provides: "This act shall apply to any common carrier or carriers, their officers, agents, and employes (meaning by `employes' persons actually engaged in or connected with the movement of any train), engaged in the transportation of passengers or property by railroad (meaning by `railroad' to include all bridges and ferries used or operated in connection with any railroad) in the District of Columbia or any Territory . . . or from one State . . . to any other State," etc. In short, the employes to which the act refers, embracing the persons described in the last sentence of the section, are those engaged in the transportation of passengers or property by railroad in the district, territorial, interstate or foreign commerce defined; and the railroad, including bridges and ferries, is the railroad by means of which the defined commerce is conducted.
The statute, therefore, in its scope, is materially different from the act of June 11, 1906, chapter 3073, 34 *618 Stat. 232, which was before this court in the Employers' Liability Cases, 207 U.S. 463. There, while the carriers described were those engaged in the commerce subject to the regulating power of Congress, it appeared that if a carrier was so engaged the act governed its relation to every employe, although the employment of the latter might have nothing whatever to do with interstate commerce. In the present statute, the limiting words govern the employes as well as the carriers.
But the argument, undoubtedly, involves the consideration that the interstate and intrastate operations of interstate carriers are so interwoven that it is utterly impracticable for them to divide their employes in such manner that the duties of those who are engaged in connection with interstate commerce shall be confined to that commerce exclusively. And thus, many employes who have to do with the movement of trains in interstate transportation are, by virtue of practical necessity, also employed in intrastrate transportation.
This consideration, however, lends no support to the contention that the statute is invalid. For there cannot be denied to Congress the effective exercise of its constitutional authority. By virtue of its power to regulate interstate and foreign commerce, Congress may enact laws for the safeguarding of the persons and property that are transported in that commerce and of those who are employed in transporting them. Johnson v. Southern Pacific Company, 196 U.S. 1; Adair v. United States, 208 U.S. 177, 178; St. Louis, I.M. & S. Railway Company v. Taylor, 210 U.S. 281; Chicago, Burlington & Quincy Railway Company v. United States, decided May 15, 1911, 220 U.S. 559. The fundamental question here is whether a restriction upon the hours of labor of employes who are connected with the movement of trains in interstate transportation is comprehended within this sphere of authorized legislation. This question admits of but one *619 answer. The length of hours of service has direct relation to the efficiency of the human agencies upon which protection to life and property necessarily depends. This has been repeatedly emphasized in official reports of the Interstate Commerce Commission, and is a matter so plain as to require no elaboration. In its power suitably to provide for the safety of employes and travelers, Congress was not limited to the enactment of laws relating to mechanical appliances, but it was also competent to consider, and to endeavor to reduce, the dangers incident to the strain of excessive hours of duty on the part of engineers, conductors, train dispatchers, telegraphers, and other persons embraced within the class defined by the act. And in imposing restrictions having reasonable relation to this end there is no interference with liberty of contract as guaranteed by the Constitution. Chicago, Burlington & Quincy Railroad Company v. McGuire, 219 U.S. 549.
If then it be assumed, as it must be, that in the furtherance of its purpose Congress can limit the hours of labor of employes engaged in interstate transportation, it follows that this power cannot be defeated either by prolonging the period of service through other requirements of the carriers or by the commingling of duties relating to interstate and intrastate operations.
Second. It is also urged that the statute is void for uncertainty. This objection is based on the wording of the first proviso in § 2 of the act, which is as follows:
"Provided, That no operator, train dispatcher, . . . shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the day time, except in case of emergency, when the employes named in this *620 proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period on not exceeding three days in any week."
It is said that the words "except in case of emergency," make the application of the act so uncertain as to destroy its validity. But this argument in substance denies to the legislature the power to use a generic description, and if pressed to its logical conclusion would practically nullify the legislative authority by making it essential that legislation should define, without the use of generic terms, all the specific instances to be brought within it. In a legal sense there is no uncertainty. Congress, by an appropriate description of an exceptional class, has established a standard with respect to which cases that arise must be adjudged.
Nor does the contention gather strength from the broad scope of the proviso in § 3, for if the latter, in limiting the effect of the entire act, could be said to include everything that may be embraced within the term "emergency" as used in § 2, this would be merely a duplication which would not invalidate the act.
Third. Finding that the objections to the validity of the statute are not well taken, we are brought to the question whether the Interstate Commerce Commission has authority to require the reports called for by its order.
Section 4 of the act provides:
"SEC. 4. It shall be the duty of the Interstate Commerce Commission to execute and enforce the provisions of this Act, and all powers granted to the Interstate Commerce Commission are hereby extended to it in the execution of this Act."
The Commission then may call to its aid in the enforcement of the act "all powers granted" to it. And, although there might have been doubt as to the adequacy of the authority of the Commission, under the law as it formerly *621 stood, to require these reports, there can be none now in view of the amendment of § 20 of the act to regulate commerce by the act of June 18, 1910, c. 309, 36 Stat. 556. As so amended, this section contains the following provision:
"The commission shall also have authority by general or special orders to require said carriers, or any of them, to file monthly reports of earnings and expenses, and to file periodical or special, or both periodical and special, reports concerning any matters about which the commission is authorized or required by this or any other law to inquire or keep itself informed or which it is required to enforce; and such periodical or special reports shall be under oath whenever the commission so requires."
This clearly embraces the power which the Commission here asserts, and it is certainly now entitled to promulgate an order requiring reports to be made. It follows that as, under the stipulation of record here, the requirement of the Commission is to operate wholly in the future and it has been suspended awaiting the final determination of this cause, the question of the authority of the Commission at the time the order was made has become a moot one. Were there no other question before us the appeal would accordingly be dismissed, and to justify a reversal of the judgment and the sustaining of the complainant's bill other grounds must appear.
Nor can it be said, so far as the scope of the requirement of the order is concerned, that it goes beyond the authority which has been conferred upon the Commission. The order relates to the employes who are "subject to said act." The bill alleges that, in the original forms prescribed, the carrier was required to show the employes who were "either on duty for a period of time in excess of that contemplated by the act or who had not been off duty after any period of service for the length of time prescribed by the act, and in the case of every such employe *622 the carrier was required to state the cause of and the facts, if any, explanatory of the excess service thus rendered by the employe." By the amended instructions set forth in the stipulation, it appears that "in case no employe has been employed in excess of the time named in said act, and in case no employe has gone on duty with less than the statutory period off duty," a separate form of oath to that effect will be accepted in lieu of the forms which are to be used in detailing excess service. And, as already noted, the reports are to be made by the secretary or similar officer.
To enable the Commission properly to perform its duty to enforce the law, it is necessary that it should have full information as to the hours of service exacted of the employes who are subject to the provisions of the statute, and the requirements to which we have referred are appropriate for that purpose and are comprehended within the power of the Commission.
Fourth. There is the final objection that to compel the disclosure by these reports of violations of the law is contrary to the Fourth and Fifth Amendments of the Constitution of the United States.
The order of the Commission is suitably specific and reasonable, and there is not the faintest semblance of an unreasonable search and seizure. The Fourth Amendment has no application.
Nor can the corporation plead a privilege against self-crimination under the Fifth Amendment. Hale v. Henkel, 201 U.S. 74, 75; Hammond Packing Company v. Arkansas, 212 U.S. 348, 349; Wilson v. United States, decided May 15, 1911, ante, p. 361. With respect to its officers, it would be sufficient to say that the privilege guaranteed to them by this amendment is a personal one which cannot be asserted on their behalf by the corporation. But the transactions to which the required reports relate are corporate transactions subject to the regulating power *623 of Congress. And, with regard to the keeping of suitable records of corporate administration, and the making of reports of corporate action, where these are ordered by the Commission under the authority of Congress, the officers of the corporation, by virtue of the assumption of their duties as such, are bound by the corporate obligation and cannot claim a personal privilege in hostility to the requirement. Wilson v. United States, supra.
The decree of the Circuit Court is
Affirmed.
NOTES
[1] Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the provisions of this Act shall apply to any common carrier or carriers, their officers, agents, and employes, engaged in the transportation of passengers or property by railroad in the District of Columbia or any Territory of the United States, or from one State or Territory of the United States or the District of Columbia to any other State or Territory of the United States or the District of Columbia, or from any place in the United States to an adjacent foreign country, or from any place in the United States through a foreign country to any other place in the United States. The term "railroad" as used in this Act shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any common carrier operating a railroad, whether owned or operated under a contract, agreement, or lease; and the term "employes" as used in this Act shall be held to mean persons actually engaged in or connected with the movement of any train.

SEC. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this Act to require or permit any employe subject to this Act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employe of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employe who has been on duty sixteen hours in the aggregate in any twenty-four-hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty: Provided, That no operator, train dispatcher, or other employe who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four-hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency, when the employes named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four-hour period on not exceeding three days in any week: Provided further, The Interstate Commerce Commission may after full hearing in a particular case and for good cause shown extend the period within which a common carrier shall comply with the provisions of this proviso as to such case.
SEC. 3. That any such common carrier, or any officer or agent thereof, requiring or permitting any employe to go, be, or remain on duty in violation of the second section hereof, shall be liable to a penalty of not to exceed five hundred dollars for each and every violation, to be recovered in a suit or suits to be brought by the United States district attorney in the district court of the United States having jurisdiction in the locality where such violation shall have been committed; and it shall be the duty of such district attorney to bring such suits upon satisfactory information being lodged with him; but no such suit shall be brought after the expiration of one year from the date of such violation; and it shall also be the duty of the Interstate Commerce Commission to lodge with the proper district attorneys information of any such violations as may come to its knowledge. In all prosecutions under this Act the common carrier shall be deemed to have had knowledge of all acts of all its officers and agents: Provided, That the provisions of this Act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employe at the time said employe left a terminal, and which could not have been foreseen: Provided further, That the provisions of this Act shall not apply to the crews of wrecking or relief trains.
SEC. 4. It shall be the duty of the Interstate Commerce Commission to execute and enforce the provisions of this Act, and all powers granted to the Interstate Commerce Commission are hereby extended to it in the execution of this Act.
SEC. 5. That this Act shall take effect and be in force one year after its passage.