SCHWEIG v. CHICAGO, M. & ST. P. RY. CO.

(District Court, D. Minnesota, Fourth Division. April 25, 1913.)

MASTER AND SERVANT (§ 94*)—INTERSTATE CARRIERS—HOURS OF SERVICE ACT —CONSTRUCTION.

To bring a railroad employé within the meaning of Hours of Service Act March 4, 1907, c. 2939, 34 Stat. 1415 (U. S. Comp. St. Supp. 1911, p. 1321), making it unlawful for interstate railroad companies to require or permit employés to remain on duty for a longer period than 16 consecutive hours, or more than 16 hours in the aggregate in any 24-hour period, he must be engaged in work which has some connection with the safety of a train, or with the safety of persons who might be injured by the movement of the train; and a person employed at stockyards, in preparing cars for loading with stock and in assisting to load the same, but who has no duty in connection with the movement of the cars or train, is not within the act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 159; Dec. Dig. § 94.*]

At Law. Action by Peter Schweig, as administrator of the estate of Walter Schweig, deceased, against the Chicago, Milwaukee & St. Paul Railway Company. On motion to direct verdict for defendant. Motion granted.

Plaintiff's intestate, Walter Schweig, was employed by the defendant in its yards at Montevideo, Minn., in loading and unloading live stock. His duties were to assist in driving cattle from the yards and the chutes into the cars, to place boards so that the live stock could pass from the platform into the cars, to fill the water troughs with which some of the cars were equipped, and to put sand upon the floors of the cars. On the day on which he was killed he had been employed in the performance of these duties in connection with the loading of 21 cars of stock. After these cars were loaded, he was directed by the foreman to go anoter part of the yard to see if 8 other cars which were to be taken in the same train were ready for loading. He, with the witness Jung, stepped upon the rear footboard of a switch engine for the purpose of complying with this order. While this engine was in motion, drawing cars, Schweig attempted to step over the drawbar from one side of the footboard to the other, fell onto the track, and was run over by the following cars and killed. The only act of negligence charged in the complaint was a violation of the Hours of Service Act (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]). It was admitted that, if Schweig came within the terms of the act, it had been violated. These stock cars were moving in interstate commerce. After the plaintiff rested the following proceedings took place.

Davis & Michel, of Marshall, Minn., for plaintiff.

F. W. Root and N. J. Wilcox, both of Minneapolis, Minn., for defendant.

WILLARD, District Judge. I assume that it is a question of law for the court to decide as to whether or not the deceased came within the Hours of Service Act. I will hear you, Mr. Davis, upon the question as to whether or not Schweig was engaged in or connected with the movement or operation of any train at the time he met his death.

(Argument by Mr. Davis.)

The Court: One of the witnesses testified that he was directed to take these men on the engine to their homes for dinner and bring

them back. Do you claim that a person so carried would be engaged in the movement or operation of that engine?

Mr. Davis: Yes, sir; I would. While he was riding on that train he would be so engaged, I think. If that was the custom of the company in interstate commerce, I think he would be engaged in the movement of a train while going from his work and back again. He was on duty at that time, and if his work was there I think he would be engaged in the movement or operation of a train at that time.

The Court: These crews that are taken out to their work on trains, do you think that they are engaged in the movement or operation of a train while they are being so carried?

Mr. Davis: Yes, sir; I think so, while they are on duty in the line of their work.

The Court: These men, whose only duty it is to put ice into dining cars at stations when the cars are at rest, would they be engaged in the movement or operation of a train?

Mr. Davis: Yes, sir; I think so.

The Court: I have examined most of the cases in this pamphlet published by the Interstate Commerce Commission, and all of them except two, as near as I can ascertain, relate to conductors, engineers, or trainmen. In one of the two cases the employé was a switchman, and in the other he was said to be a flagman, but it turned out that the flagman was really a brakeman on a passenger train. It turned out, too, that the switchman was engaged in telephoning orders from the train dispatcher, so that he came more under the head of a train dispatcher. With the exception of these two cases, I have not found a single case which comes anywhere near extending the purposes of this act to the case which we have here now. It is important, in determining what the act means, to ascertain why it was passed. The Supreme Court, in the case of Baltimore & Ohio Ry. Co. v. Interstate Commerce Commission, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878, said:

"The length of hours of service has direct relation to the efficiency of the human agencies upon which protection to life and property necessarily depends. This has been repeatedly emphasized in official reports of the Interstate Commerce Commission, and is a matter so plain as to require no elaboration. In its power suitably to provide for the safety of employés and travelers, Congress was not limited to the enactment of laws relating to mechanical appliances; but it was also competent to consider, and to endeavor to reduce, the dangers incident to the strain of excessive hours of duty on the part of engineers, conductors, train dispatchers, telegraphers, and other persons embraced within the class defined by the act."

It is true that the Supreme Court did not undertake to name all the persons to whom the act could extend; but it seems that, in naming certain persons to whom the act does extend, it intended to indicate that to come within the act any one not named must be one who comes somewhere near being engaged in duties similar to those mentioned.

205 F.—7

The Circuit Court of Appeals for this Circuit, in the case of United States v. Kansas City Southern Ry. Co., 202 Fed. 828, decided last March, says:

"This law was passed to meet a condition of danger incidental to the working of railroad employés so excessively as to impair their strength and alertness."

Then there was another case against the Kansas City Southern Railway Company ([D. C.] 189 Fed. 471), with an opinion by Judge Trieber, wherein he says:

"Experience has shown that many serious accidents to trains, causing great loss of life or permanent disabilities to passengers, as well as employés, are often due solely to the fact that members of the train crew had become exhausted by reason of being required or permitted to remain on duty for too long a period, and therefore unable to give that care and attention necessary for the safety of the train. To prevent accidents from such causes the Congress, in its wisdom, enacted this statute prohibiting railroads, not only from requiring any employé subject to the act to remain on duty for a longer period than 16 consecutive hours, but also 'permitting' it."

The employé must be engaged in work which has some connection, though it may be remote, with the safety of the train, or with the safety of persons who might be injured by the movement of the train. That being the case, I cannot see how this plaintiff can by any possibility come within the terms of the act. Certainly, when he was riding back and forth from his work, he was not engaged in the movement or operation of any train. He certainly was not, while he was walking along on the top of this fence, driving cattle into the cars, engaged in the movement of any train, so as to come within the operation of this law. I cannot see how he can be said to have been engaged in the movement or operation of a train when he was around these stockyards. He was directed to get these cars ready for service by putting boards between the platforms and the cars, so that the cattle could pass over them into the cars. He was simply getting the car ready for movement; but he was not moving it, nor was he engaged in the movement of it. He was not engaged, within the terms of this statute, in the movement or operation of any train.

It is said that he was ordered by this foreman to go down into the yards to do something. My recollection of the testimony of his brother was that Mr. Shriner told him to go down and see if the 8 cars were ready for loading. That did not indicate that he was engaged in the movement or operation of any train, when he was to go down there and see if the cars were fit for loading. He was not engaged in the movement or operation of these 8 cars at that time, and he was not engaged in the movement or operation of the train on which he was riding. I cannot see any way in which it can be said that he was engaged in the movement or operation of a train when he was on the footboard of this engine.

As long as this is a question which I alone have to determine, I think I may as well determine it now. Mr. Wilcox, if you will make a motion for a directed verdict, I will grant it.

Counsel for defendant moves the court to direct the jury to return a verdict in favor of the defendant.

The court grants the motion, and counsel for plaintiff excepts to the ruling.