BOWLES, Administrator, Office of Price Administration, v. CHEW.

No. 22778–G.

District Court, N. D. California, S. D.

Jan. 13, 1944.

George Moncharsh, W. Dunlap Cannon, Jr., and Thomas C. Ryan, Office of Price Administration, all of San Francisco, Cal., for plaintiff.

J. Thaddeus Cline, of San Francisco, Cal., for defendant.

GOODMAN, District Judge.

On September 26, 1943, plaintiff, as Administrator of the Office of Price Administration, commenced this action, pursuant to § 205(e) of the Emergency Price Control Act of 1942, Public Law, 421, 77th Congress 2nd Sess., 56 Stat. 23, 50 U.S.C. A. Appendix, § 925(e), to recover treble damages from defendant, a lumber broker and wholesaler, because of sales in excess of established maximum prices. Maximum Price Regs. 26, 215.

The record shows that in August 1943, representatives of plaintiff, acting upon information received that defendant was violating maximum price regulations, visited defendant's place of business, and, after exhibiting to the defendant's bookkeeper,

one Raylyn Hoover, a copy of § 15 of Maximum Price Regulation 26,[1] were permitted to examine defendant's books and sales records. Copies of such records were made by plaintiff's representatives, and the data thus obtained bottoms the complaint herein.

Two motions of defendant have been argued and submitted for decision:

1. Motion to suppress all documents, records and information obtained by plaintiff as a result of the so-called "search and seizure" at defendant's place of business, for the return of any data, records or copies taken or made by plaintiff, and for an order directing plaintiff to desist from further proceeding herein based upon the information so acquired.

2. Motion to dismiss on the ground that the evidence referred to was secured in violation of the Constitution (Amds. IV and V), that the complaint does not state a cause of action, and that § 205(e) of the Emergency Price Control Act is unconstitutional.

Motion to Suppress and Return
Evidence.

██ It is clear from the affidavits submitted, pro and con, that no "force" or "seizure" occurred at the time of the examination of defendant's records, and I so find. Defendant's employee voluntarily permitted the examination, when she was shown and read § 15 of Regulation 16, supra. Sufficient factual basis for the motion is therefore lacking. Thus there is no need to pass upon the contention of plaintiff that such a motion will not lie in a civil action, citing Rule 12(b), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

But defendant contends that § 202(b) of the Act, 50 U.S.C.A.Appendix, § 922(b),[2] by which the Administrator is authorized by regulation to require persons engaged in business to keep records and permit inspection thereof by the Administrator, and the regulations (§ 15 Reg. 16; § 15 Reg. 215) promulgated by its authority, are unconstitutional and violate the Fourth and Fifth Amendments to the Constitution, and that the Administrator's examination of the defendant's books was therefore unlawful and the evidence obtained thereby cannot be used.

In a consideration of this question, it must first be noted that the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., was passed fifty-three days after the Declaration of war upon Japan. Congress expressly stated (Sec. 1) that it (the Act) was: "necessary to the effective prosecution of the present war." (Declaration of war against Germany and Italy followed shortly after December 8, 1941.)

██ It was "a statute born of the exigencies of war." Scripps-Howard Radio, Inc., v. Federal Communications Commission, 316 U.S. 4, 17, 62 S.Ct. 875, 883, 86 L.Ed. 1229. If National Security demands, the limits within which the war powers may be exercised are not circumscribed. United States v. MacIntosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302. The battle against inflation, to preserve the domestic economy, was regarded by Congress as important as the armed conflict itself. It "is now unlimited national mobilization in a war for survival." (Senate

---

1 "On and after June 29, 1942, every person who, during any calendar month, offers or agrees to sell, sells, or delivers, or offers or agrees to buy, buys or receives a total of 34,000 pounds or more of Douglas fir or other West Coast lumber in the course of trade or business, shall keep for inspection by the Office of Price Administration for a period of not less than two years, a complete and accurate record of every such offer, agreement, purchase, sale or delivery showing the date thereof, the name and address of the buyer and the seller, the price paid or received, and the quantity, species, size, grade, specifications and condition of seasoning of the lumber in each such purchase or sale." (Sec. 15 of Reg. 215 is similar.)

2 "The Administrator is further authorized, by regulation or order, to require any person who is engaged in the business of dealing with any commodity, or who rents or offers for rent or acts as broker or agent for the rental of any housing accomodations, to furnish any such information under oath or affirmation or otherwise, to make and keep records and other documents, and to make reports, and he may require any such person to permit the inspection and copying of records and other documents, the inspection of inventories, and the inspection of defense-area housing accommodations. The Administrator may administer oaths and affirmations and may, whenever necessary, by subpoena require any such person to appear and testify or to appear and produce documents, or both, at any designated place."

Rep. 931, 77th Congress, 2nd Sess.) Viewed against such a background, the requirement that records be kept by merchants and be open to inspection has no constitutional inhibitions. Furthermore, it is no longer open to question, that records designated to be maintained by statute are of a quasi-public nature and thereby automatically open for government inspection. United States v. Mulligan, D.C., 268 F. 893; cf. Baltimore & Ohio R. R. v. Interstate Commerce Commission, 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878; Standard Home Co. v. Davis, D.C., 217 F. 904.

In United States v. Mulligan, supra, the defendant was indicted for refusal to permit government inspection of records of sugar sales, required to be kept, pursuant to § 5 of the Lever Act, 40 Stat. 277, a statute passed during World War I. By the Lever Act the President was authorized to issue licenses as a condition to doing business. So authorized is the Administrator under the Price Control Act. (§ 205(f) (1). The court held that the provision for inspection was not in derogation of the Fourth and Fifth Amendments. "Regulation which would not permit the government representatives to ascertain anything about the dealers' business would be no regulation. * * * It is a very feeble government which, in time of war, can have no supervision over dealers in the sale of necessaries, without which the war could not be safely conducted." [268 F. 897.]

Cudahy Packing Co. v. United States, 7 Cir., 15 F.2d 133, where the demand of the Secretary of Agriculture, pursuant to § 402 of Packers and Stock Yards Act 1921, 7 U.S.C.A. § 222, for access to and right to copy books of account and records of plaintiff packing company was held unreasonable and violative of the Fourth Amendment, is distinguishable, because not involving the war powers of Congress, as pointed out, supra.

Furthermore, defendant's claim of violation of rights guaranteed by the Fourth Amendment is not factually sustained in the record. Here there was inspection, under claim of right, consented to.

 Claim of violation of rights guaranteed by the Fifth Amendment is without merit, since this is not a criminal action. Nor is the cause of a penal nature, in the sense that the damages sought are by way of punishment for an offense, against the state, which the Executive has power to pardon. Huntington v. Attrill, 146 U.S. 657, 668, 13 S.Ct. 224, 36 L.Ed. 1123. Congress, having in mind the precedents of other legislation, not only did not consider the action for damages to be penal, but purposed an entirely different format and objective: "actions to recover damages— such actions have proved valuable in the enforcement of other regulatory statutes, such as the Fair Labor Standards Act [29 U.S.C.A. § 201 et seq.], both to relieve the government of a part of the burden of enforcement and to deter initial violations." Sen.Rep.No.931, 77th Cong. 2d Sess. p. 9.

The motion to suppress on the grounds urged must be denied.

### Motion to Dismiss.

Defendant urged that the Administrator has no power under Sec. 205(e) of the Act to sue defendant, a wholesaler, for treble damages. He contends that the Administrator can sue only if the buyer may not maintain an action and that this is a case where, under the Act, only a buyer may sue. Defendant's construction of Sec. 205 (e), following the reasoning of Judge Hall in Brown v. Glick Bros. Lumber Co., D.C., 52 F.Supp. 913, is that any merchant, wholesaler or retailer, may, if injured, sue any other merchant for treble damages, and further that the Administrator is precluded, in such event, from suing, unless the defendant is a "bootlegger" or "black market operator" not "regularly engaged in trade or business."

 In my opinion, Sec. 205(e) of the Act does not reasonably admit of any such construction. What Congress said, what it meant, and the rationale thereof, are the pertinent considerations in construing the Act.

Congress said: "the person who buys such commodity for use or consumption, *other than in the course of trade or business* may bring an action * * *." (Emphasis supplied.) Thus is described the person who may sue. If the buyer of merchandise is not in the above described category, then "the Administrator may bring such action * * * on behalf of the United States." Thus is described the circumstance whereby the Administrator is empowered to sue. The Senate Report on the Act (Sen.Rep. #921, 77th Cong. 2nd Sess. p. 26) indicates the foregoing to be the precise meaning intended by Congress.

It is not subject to dispute that a "person who buys * * * for use or consumption," means, in the ordinary sense, the consumer, i. e. the general public buying over the counter, for its own use. In order that there might be no doubt that Congress intended this description to be in the ordinary sense, it added the excluding clause: "other than in the course of trade or business." Thus the tradesmen, i. e. merchants engaged in business, buying and selling between themselves, were not given the right to sue.

It is clear to me that what Congress said and meant is that members of the general public who buy commodities, to use or consume themselves, may sue for treble damages, but that tradesmen, who deal and buy and sell between themselves in the course of business, may not sue one another.

The rationale backgrounding this enforcement program is quite obvious. The consumer (member of the general using and consuming public) cannot in his daily life keep abreast of the ceiling prices of the countless articles on the market which he needs. He can easily be advantaged, since a small overcharge cannot readily be detected.

To implement the battle against inflation, the right to sue for damages was considered by Congress as an effective deterrent to price ceiling violations. The buying public is enlisted in the anti-inflation fight. It is made worth its while to act as an active agent to enforce the law. Sen.Rep. No.931, p. 9, supra. On the other hand, Congress clearly indicated that merchants and dealers, trading with one another, presumably for profit, should not engage in inter-commercial litigation to enforce the Act or prevent violations. . Hence the right to sue for such violations was reserved to the Administrator, inasmuch as he has licensing authority under the Act, and may, by virtue of the record-keeping requirement (§ 202(b) readily assemble the data for enforcement.

To interpret the plain purport of the Act to mean that the Administrator may only sue "bootleggers" or "black market operators," because they may be said to be "not *regularly* engaged in trade or business" (emphasis supplied) appears to me to be wholly unwarranted. Furthermore, such an interpretation of the statute is not a worthy cure-all for so-called constitutional objections to § 202(b) of the Act.

In any consideration of these questions, we must be ever mindful that the legislative purpose is to prevent inflation. Limiting the Administrator to suits against "bootleggers" and "black market operators," in my view, is not in furtherance of that purpose.

The motions to suppress and to dismiss are severally denied.