**UNITED STATES of America,**
Plaintiff,

v.

**DETROIT, TOLEDO AND IRONTON RAILROAD COMPANY, Dearborn, Michigan, Defendant.**

**No. 20296.**

United States District Court
E. D. Michigan, S. D.
May 26, 1962.

Lawrence Gubow, U. S. Atty., Detroit, Mich., Robert F. Ritzenheim, Asst. U. S. Atty., Detroit, Mich., Henry L. Hilzinger, Atty., I.C.C., for plaintiffs.

Frederick C. Nash and Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., for defendant.

THORNTON, District Judge.

The Court adopts the Supplemental Findings of Fact and Conclusions submitted by the plaintiff.

## FINDINGS OF FACT

The United States of America, at the request of the Interstate Commerce Commission, brought this suit pursuant to the provisions of the Hours of Service Act, 45 U.S.Code 61 to 64, against the Detroit, Toledo and Ironton Railroad Company, hereinafter called the railroad, a common carrier engaged in interstate commerce by railroad.

This is a civil action for the recovery of the statutory penalty for one instance of an alleged violation of said Act. The case was tried by the Court without a jury and is based upon the Government's contention that in the twenty-four hour period beginning at 12:45 p. m., on January 15, 1960, the railroad required or permitted one of its employees, who had been on duty sixteen hours in the aggregate, to continue or again go on duty without having had at least eight consecutive hours off duty. The trial of this case developed no material dispute as to the facts. The major point of contention was the significance of those facts with respect to the Hours of Service Act. Generally stated those facts were that within said twenty-four hour period one of defendant's brakemen drove his automobile from place of call to

place of duty, performed service, then drove his automobile back to place of call and finally again performed duty as a brakeman. The sole issue in this case is whether the driving time, under the circumstances here involved, constituted on duty time under the Hours of Service Act.

The evidence in this case established and the Court finds that the railroad established and maintained a brakemen's extra board at Flat Rock, Michigan, which embraced assignments of work from that board to points as far away as Napoleon, Ohio, and Lima, Ohio;

That the railroad contemplated that men being at Flat Rock, Michigan, and working as extra brakemen from that board would be called upon to go to Napoleon, Ohio, for service with the railroad;

That brakemen assigned to said extra board were called for and required to protect various assignments at Flat Rock and other points on defendant's railroad;

That on January 15 and 16, 1960, the railroad's employee, D. W. Baden, was assigned to and worked from the brakemen's extra board at Flat Rock, Michigan;

That on January 15, 1960, brakeman Baden was called for service on run No. 95, on duty at Napoleon, Ohio, at 3:30 p. m. that date;

That, as customary, Mr. Baden was called for the assignment on job No. 95 four hours in advance of its on duty time, upon the basis of the usual two hour call plus two hours' driving time Flat Rock, Michigan, to Napoleon, Ohio;

That Mr. Baden drove his automobile and was alone from Flat Rock, Michigan, to Napoleon, Ohio;

That the driving time to Napoleon was about one hour and forty-five minutes and he arrived at Napoleon, Ohio, about 2:45 p. m.;

That on January 15 and 16 there was no rail or bus service available to brakeman Baden to go to Napoleon or return to Flat Rock;

That brakeman Baden went on duty on Job No. 95 at 3:30 p. m. and performed the usual duties of a brakeman until released from duty at 11:59 p. m.;

That he then stopped at Napoleon long enough to get a bite to eat after which he drove his automobile, unaccompanied, back to Flat Rock, Michigan;

That brakeman Baden was entitled to return to Flat Rock because Job No. 95 was not scheduled to work on April 16, 1960, and he returned to Flat Rock because he wanted to get back on the extra board so that he could work on January 16, 1960;

That he arrived at Flat Rock about 2:30 a. m. on January 16, 1960, and sometime thereafter reported his arrival to the crew clerk who marked him up as available for subsequent service;

That Mr. Baden was again called at 6:31 a. m. for services as a brakeman on duty 7:59 a. m., January 16, 1960, and he performed service on a yard train pulled by locomotive No. 924 from 7:59 a. m. to 3:59 p. m. on that date;

That the railroad allowed Baden 82 car miles at 8¢ per mile for use of his automobile from Flat Rock to Napoleon and a like allowance for the return trip;

That in addition to car mileage, brakeman Baden was paid at the rate of an eight-hour day for the time traveling from Flat Rock, Michigan, to Napoleon, Ohio, and he made claim for the same type of pay for his return trip from Napoleon, Ohio, to Flat Rock, Michigan;

That the claim for an eight-hour day's pay for the return trip was denied by the railroad because of a provision in the contract between the railroad and the union;

And that at the time of his employment Mr. Baden was asked by the railroad if he had an automobile.

CONCLUSIONS

The purpose of the Hours of Service Act is to promote safety in train

operation by preventing the excessive mental and physical strain which usually results from remaining too long at an exacting task. This law must be construed and applied in view of that purpose. Baltimore & Ohio R. Co. v. Interstate Commerce Commission, 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878; Chicago & Alton R. Co. v. United States, 247 U.S. 197, 38 S.Ct. 442, 62 L.Ed. 1066; Atchison, Topeka & Santa Fe Ry. Co. v. United States, 269 U.S. 266, 46 S.Ct. 109, 70 L. Ed.2d 268.

The Supreme Court in Atchison, Topeka & Santa Fe Ry. Co. v. United States, 244 U.S. 336, on page 342, 37 S. Ct. 635, on page 637, 61 L.Ed. 1175, in considering the purpose of the Hours of Service Act, said:

" * * * it must be ᐧremembered that the purpose of the act was to prevent the dangers which must necessarily arise to the employee and to the public from continuing men in a dangerous and hazardous business for periods so long as to render them unfit to give that service which is essential to the protection of themselves and those entrusted to their care. It is common knowledge that the enactment of this legislation was induced by reason of the many casualties in railroad transportation which resulted from requiring the discharge of arduous duties by tired and exhausted men whose power of service and energy had been so weakened by overwork as to render them inattentive to duty or incapable of discharging the responsible labors of their positions."

■■■ The requirements of the law are absolute and lack of knowledge, lack of wilfulness, inadvertence, etc., will not excuse violations. Minneapolis, St. Paul & S. S. M. Ry. Co. v. United States, 8th Cir., 240 F. 315; Oregon Short Line R. Co. v. United States, 9th Cir., 234 F. 584. Also, the Hours of Service Act is a remedial statute and must be liberally construed to effectuate its purpose. At-chison, Topeka & Santa Fe Ry. Co. v. United States, 244 U.S. 336, 37 S.Ct. 635, 61 L.Ed. 1175; San Pedro, Los Angeles & Salt Lake R. Co. v. United States, 8th Cir., 213 F. 326.

■■ An employee is on duty under the Hours of Service Act when he is under orders and not at liberty to go away. He is none the less on duty even though inactive if the time is not his own. Missouri, Kansas & Texas Ry. Co. of Texas v. United States, 231 U.S. 112, 34 S.Ct. 26, 58 L.Ed. 144; United States v. Chicago, M. & P. S. R. Co., E. D. of Wash., 197 F. 624. Time performing work required by the carrier before the train is started on its way, including required preparation for work is time on duty. United States v. Illinois Central R. Co., D.C., 180 F. 630. Also, an employee is on duty when at his post in obedience to instructions and requirements of his employer. The obvious purpose of this humanitarian legislation is defeated if an employee is required or permitted to occupy the hours intended for rest and relaxation with service of another kind. The particular character of that service is immaterial. Baltimore & Ohio R. Co. v. Interstate Commerce Commission, 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878; Great Northern Ry. Co. v. United States, 9th Cir., 211 F. 309.

■ Short interruptions in service do not break the continuity of on duty time. Time off duty to break that continuity must provide an opportunity for substantial rest and relaxation. That an employee is absolutely relieved from service is not of controlling importance if the time is so short or the opportunities for rest are so meager ᐧthat for all practical purposes the employee cannot recuperate from fatigue. United States v. Great Northern Ry. Co., 9th Cir., 285 F. 152; Minneapolis & St. L. R. Co. v. United States, 8th Cir., 245 F. 60. Brief interruptions such as time for meals, waiting for orders, etc., cannot be considered off duty. Southern Pacific Co. v. United States, 9th Cir., 222 F. 46.

864

In relation to this time spent in traveling, and particularly in driving, I compare that time to the function of an engineer operating a locomotive for a railroad who has the function of driving the locomotive over a right-of-way that is owned by the railroad, and has the benefit of block signals and a very extensive and expansive system of warning signals; and, while I am not trying to belittle the function of an engineer of a locomotive, or the duties of an engineer of a locomotive in operating a locomotive on a run, on a railroad, on a right-of-way, at least the function of operating an automobile on a public highway, where you don't have an express right-of-way other than what is afforded you if you live up to the rules of traffic, the tension in that type of function is as great if not greater than the function of an engineer in operating a locomotive engine. I cannot see any difference, other than that the tension of operating an automobile, in my opinion, could be greater than that in operating a locomotive under certain circumstances.

In United States v. Baltimore & Ohio Railroad, 4 Cir., 133 F.2d 831, there is set forth the following:

"It is well settled that the Act is a remedial statute designed to encompass the public safety, which ought to be (and theoretically, is) the supreme law. Accordingly, the Act is entitled to a liberal interpretation, particularly when this will tend to subserve, rather than defeat, the purpose of the Act.

"Said Mr. Justice McReynolds in the Alton case (247 U.S. at pages 199, 200, 38 S.Ct. at page 443, 62 L. Ed. 1066):

"The purpose of the statute is to promote safety in operating trains by preventing the excessive mental and physical strain which usually results from remaining too long at an exacting task. * * * It must be construed and applied in view of that purpose and well-known circumstances attending the practical operation of trains."

Finally, from that same Opinion, there is the following:

"Finally, we think it is not without significance that the present action was instigated by the Interstate Commerce Commission as a manifestation of what that great administrative tribunal duly considers a wise public policy. That fact, though not in itself binding upon us, possesses nevertheless strong persuasive influence."

Also, the short interval from Mr. Baden's time of arrival at Napoleon to the starting time of run No. 95 was not of substantial duration so as to enable him to recuperate and rest after driving from Flat Rock. Likewise the short interval involved in getting something to eat before departure from Napoleon was not of such nature or duration to enable him to recuperate and rest.

I conclude that the conduct of the defendant railroad here during the 24-hour period commencing at 12:45 p. m., January 15, 1960, constituted a violation of 45 U.S.C.A. § 62, for the reason that the eight hours of deadhead time, so-called, were not in fact "hours off duty." Part of these eight hours was consumed in car-driving by the employee Baden for purposes directly related to his employment to such an extent that such hours (totaling approximately 3½ hours) may not be considered, in the light of the particular circumstances here present, as "hours off duty." They were necessary to Baden's tour of duty as defendant's employee.

The Government will be entitled to recover the sum of $500.00 from the defendant, with costs.