UNITED STATES of America,

v.

PINE VALLEY POULTRY DISTRIBU-
TORS CORPORATION, Manor Poultry
Corporation, Murray Markman, Jack
Penn, Tel-Aviv Kosher Dressed Poultry
Corporation, Nathan Tessler, Leonard
Telzer and Albert Barber, Defendants.

United States District Court
S. D. New York.
Sept. 28, 1960.

S. Hazard Gillespie, Jr., U. S. Atty.,
New York City, for U. S., George F. Rob-
erts, Asst. U. S. Atty., New York City,
of counsel.

Charles Schinitsky, New York City,
for defendants.

WEINFELD, District Judge.

Three corporate defendants and an in-
dividual defendant move to suppress evi-
dence upon the ground that it was ob-
tained in violation of their respective
rights under the fourth and fifth amend-
ments of the Constitution of the United
States. Each asserts that the evidence
was the fruit of an unreasonable search
and seizure and was secured in violation
of due process of law. In addition, the
individual defendant claims a violation
of his privilege against self incrimina-
tion.

The defendants are charged in various
counts of an information either with
transporting, or selling and offering to
sell, or both, in commerce, uneviscerated
slaughtered poultry in violation of the

Poultry Products Inspection Act.[1] The legislation was enacted to protect the public against unwholesome and adulterated poultry products. To secure effective enforcement of the Act, those engaged in the business are required to keep prescribed records and, upon request, to permit the authorized representatives of the Secretary of Agriculture, at reasonable times, to have access to and to copy such records.[2]

The evidence here sought to be suppressed was secured by inspectors of the Department of Agriculture from records kept by the defendants as required by the Act. The affidavits submitted in support of the motion establish beyond peradventure that when the inspectors requested permission to examine the records, it was granted without protest or objection. In each instance before the inspection was permitted, authorized agents of the corporate defendants and the individual defendant communicated with an attorney, who advised compliance with the official request.[3] Undoubtedly, data copied from the records form the basis upon which the information was filed, accusing these defendants of violations of the Act.

The consent to the inspection so given upon the advice of the attorney would, upon the surface, appear to dispose of any claim of violation of constitutional rights.[4] However, the consent is sought to be nullified on the ground that the provision in the statute which makes it a misdemeanor not to comply with a request for the inspection of records[5] it-self was the coercive force which compelled their consent. Thus, the defendants assert they were on the horns of a dilemma. If they refused to permit copying of the records, they subjected themselves to criminal prosecution, and if they complied with the statute and permitted the inspection, as they did, they are now confronted with a claim of waiver of their constitutional rights.[6] Whether the alleged coercive force of the statute could and did negative the consent, as is claimed, need not be determined, for under controlling authorities it is clear that the defendants' allegations of deprivation of their constitutional rights are more apparent than real.

The defendants stress that the constitutional defect of the statute here in question lies in the fact that, unlike other acts,[7] it fails to grant immunity from prosecution to the person producing the records under the compulsion of the Act, or to give the regulatory agency the power to subpoena the records. An essential question is whether, in fact, the defendants enjoyed the claimed constitutional rights with respect to the records.

█ The power of Congress to require those engaged in a business affected with a public interest to keep records subject to inspection by an administrator in order to secure enforcement of the law is not open to constitutional objection.[8] Thus, the books and records so kept are not private papers or records, but assume the characteristics of public or quasi-public documents, a distinction recog-

1. 71 Stat. 441–449 (1957); 21 U.S.C.A. §§ 451–469.

2. 21 U.S.C.A. § 460.

3. In one instance, the records were forwarded by the corporation to the attorney who thereupon turned the records over to the Department of Agriculture.

4. Zap v. United States, 1946, 328 U.S. 624, 628, 66 S.Ct. 1277, 90 L.Ed. 1477; Davis v. United States, 1946, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453.

5. 21 U.S.C.A. §§ 458(g), 461.

6. Realistically, no dilemma existed since defendants could comply and then move to suppress the evidence under Rule 41 (e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which, in fact, they did by their present motion.

7. E. g., Pub.L. 86–613, § 12, 74 Stat. 379 (July 12, 1960); 52 Stat. 1057 (1938), as amended, 21 U.S.C.A. § 373; illustrations cited in Shapiro v. United States, 1948, 335 U.S. 1, 6–7 note 4, 68 S.Ct. 1375, 92 L.Ed. 1787.

8. Shapiro v. United States, 1948, 335 U.S. 1, 32, 68 S.Ct. 1375.

nized by law.[9] In a sense, such "required records" are in the public domain. As a result, they are nonprivileged and their custodian is not afforded the traditional protections of the fourth [10] or fifth [11] amendments; rather, in assuming their custody, he has accepted the incident obligation to permit inspection.

This doctrine, enunciated in the leading case of Wilson v. United States, 1911, 221 U.S. 361, 31 S.Ct. 538, while there applied to corporate records and a corporate officer, was subsequently extended by the Supreme Court to apply, as well, to individuals engaged in a business af-fected with a public interest, where Congress has required the keeping of records in order to secure compliance with the law.[12]

 Since the defendants here had no constitutional privilege to relinquish with respect to records they were required to keep in the conduct of their business, there is no basis to their contention that the absence of an immunity clause or the absence of the subpoena power in the regulatory agency to compel the production of the records presents any constitutional issue.[13] Lack of subpoena power may present problems of en-

9. Shapiro v. United States, Ibid.; Wilson v. United States, 1911, 221 U.S. 361, 380–382, 31 S.Ct. 538, 55 L.Ed. 771. Cf. Davis v. United States, 1946, 328 U.S. 582, 66 S.Ct. 1256.

10. Shapiro v. United States, 1948, 335 U.S. 1, 32–34, 68 S.Ct. 1375; Wilson v. United States, supra note 9, 221 U.S. at pages 374–75, 31 S.Ct. at pages 541–542; Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566, 570–571, certiorari denied, 1945, 325 U.S. 877, 65 S.Ct. 1554, 89 L.Ed. 1994.
"The Amendment * * * cannot be applied to regulations which require reports and disclosures in respect to a business which is affected with a public interest, so far as such disclosures may be reasonably necessary for the due protection of the public." Bartlett Frazier Co. v. Hyde, 7 Cir., 65 F.2d 350, 351–352, certiorari denied, 1933, 290 U.S. 654, 54 S.Ct. 70, 78 L.Ed. 567. See Boyd v. United States, 1886, 116 U.S. 616, 623–624, 6 S.Ct. 524, 29 L.Ed. 746, where the essential distinction is also recognized. While most of the decided cases concerned enactments passed in time of war, or which regulated a licensed enterprise, and some lower courts have placed some reliance on these factors in reaching a decision, see, e. g., Bowles v. Chew, D.C.N.D.Cal.1944, 53 F.Supp. 787, there is nothing in the language of the Supreme Court to indicate that those decisions rely upon them. See Rodgers v. United States, 6 Cir., 1943, 138 F.2d 992, 995–996, which did not contain these factors.

11. "[I]n the case of public records and official documents, made or kept in the administration of public office, the fact of actual possession or of lawful custody would not justify the officer in resisting inspection, even though the record was made by himself and would supply the evidence of his criminal dereliction. If he has embezzled the public moneys and falsified the public accounts, he cannot seal his official records and withhold them from the prosecuting authorities on a plea of constitutional privilege against self-crimination. The principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established. There the privilege which exists as to private papers cannot be maintained.
* * * * *
"The fundamental ground of decision in this class of cases, is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production although their contents tend to criminate him. In assuming their custody he has accepted the incident obligation to permit inspection." Wilson v. United States, 1911, 221 U.S. 361, 380, 381–382, 31 S.Ct. 538, 544. Cf. Davis v. United States, 1946, 328 U.S. 582, 66 S.Ct. 1256.

12. Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375.

13. Cf. Heike v. United States, 1913, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450. It is not without significance that in the latter case Mr. Justice Holmes emphasized that the decision in Wilson rested "upon the absence of constitutional privilege, not upon the ground of statutory immunity * * *." Id. 227 U.S. at page 143, 33 S.Ct. at page 228.

forcement to the Administrator,[14] but it does not create a constitutional right where one does not exist. As to the absence of an immunity provision, it is sufficient to say that even its presence in a statute did not sustain a claim of personal privilege against self incrimination with respect to "required records." [15]

The motion is denied in all respects.

14. Had the defendants refused access to the records, the inspectors had no power to secure the documents, even though required by law, through the process of a general search and seizure of the custodians' premises. United States v. Shapiro, 2 Cir., 1947, 159 F.2d 890, 893, affirmed 1948, 335 U.S. 1, 68 S.Ct. 1375; United States v. Davis, 2 Cir., 1945, 151 F.2d 140, 144 (Frank, J., concurring), affirmed 1946, 328 U.S. 582, 66 S. Ct. 1256, 90 L.Ed. 1453; Bowles v. Beatrice Creamery Co., 10 Cir., 1944, 146 F.2d 774, 779. However, obvious remedies suggest themselves.

15. Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375.