**COOPER'S EXPRESS, INC., Defendant, Appellant,**

v.

**INTERSTATE COMMERCE COMMISSION, Plaintiff, Appellee.**

No. 6246.

United States Court of Appeals First Circuit.

Heard March 2, 1964.

Decided April 10, 1964.

Manuel Katz, Boston, Mass., with whom Paul T. Smith and Daniel Klubock, Boston, Mass., were on brief, for appellant.

John F. Curley, Regional Atty., Boston, Mass., with whom Bernard A. Gould, Asst. Director, Bureau of Inquiry and Compliance, Washington, D. C., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

The primary question on this appeal from a preliminary injunction granted by the United States District Court for the District of Massachusetts on September 30, 1963, is the constitutionality of a search conducted by authorized agents of the Interstate Commerce Commission pursuant to Section 320(d) of Title 49 United States Code.

The section provides in part that:

"The Commission or its duly authorized special agents, accountants, or examiners shall at all times have access to and authority, under its order, to inspect and examine any and all lands, buildings, or equipment of motor carriers, * * * and shall have authority to inspect and copy any and all accounts, books, records, memoranda, correspondence, and other documents of such carriers * * *. Motor carriers * * * shall submit their accounts, books, records, memoranda, correspondence, and other documents for the inspection and copying authorized by this subsection, and * * * their lands, buildings, and equipment for examination and inspection, to any duly authorized special agent, accountant, or examiner of the Commission upon demand and the display of proper credentials."

Defendant-appellant Cooper's Express, Inc., an interstate motor carrier of property holding a certificate of public convenience and necessity issued by the Commission, was visited at its principal place of business in Lawrence, Massachusetts, by district supervisor Pollard and safety inspector Shea of the ICC following the filing by Cooper's of an application to purchase the operating authority of another carrier. The agents sought to determine whether appellant was in compliance with Part II of the Interstate Commerce Act and the rules and regulations issued thereunder.

Both agents displayed their credentials to appellant's office manager and stated that they wanted to examine certain of appellant's records. They were escorted to a room about thirty feet distant from the room where the records were kept and given a desk at which to work. Under this arrangement the agents were to request the documents they desired to examine and appellant's employees would bring those documents to them. At first this procedure was satisfactory to the agents. A request was made for drivers' daily logs and with the exception of logs for one of appellant's drivers, such records were produced within fifteen to twenty minutes. But the arrangements soon broke down. Requested records were often produced only in part, if at all, and some documents had obviously been tampered with prior to their production. For instance, out of some 2,200 or 2,500 so-called delivery receipts, about 920 were not produced upon request; copies of documents covering leased equipment were not produced upon request; statements were detached and removed from delivery receipts prior to their production; of seventeen specifically identified delivery receipts only six were furnished; drivers' expense vouchers were stripped of their identifying information before production so that the agents were unable to check them against the drivers' daily logs to determine whether the drivers were operating in violation of the maximum hours-of-service regulations. Attempts by the Commission agents to gain direct access to the record room to protect against the surreptitious concealment or destruction of records were unavailing, although appellant's treasurer

was shown the provisions in the Code of Federal Regulations regarding examination of records and accounts by agents and the destruction of records.[1]

At one point during the investigation, agent Shea, without permission, opened the top drawer of the desk at which he and agent Pollard were seated and examined the documents therein. A few days later appellant's office manager told Shea that it was his private desk and that Shea had no right to inspect it. Shea replied that he felt that he had the power to inspect the office equipment, including filing cabinets and desks and that he could inspect desk drawers. He then opened the desk again, took out the first document he found, laid it on top of the desk, and asked the manager what he was going to do about it. The manager stormed out of the room. At the hearing below, the Commission's attorney conceded that section 320(d) did not give the agents the right to ransack or make a general search of appellant's premises nor the right to open appellant's desk without permission. The court agreed and refused to allow agent Shea to testify concerning the documents discovered in the desk drawer.

On the basis of the evidence presented, the court, assuming for the purpose of the hearing that section 320(d) is constitutional, granted a preliminary injunction ordering appellant

> "to submit all its accounts, books, records, memoranda, correspondence and other documents for inspection and copying, and submit all its lands, buildings and equipment for examination and inspection by duly authorized representatives of the Interstate Commerce Commission upon demand and display of proper credentials; and to desist from secreting, concealing, or destroying any accounts, books, records, memoranda, correspondence or other documents except as permitted by law."

It is well settled that Congress may require a corporation engaged in a business subject to federal regulations to keep certain records and make them available for official inspection in order to provide for effective administration and enforcement. Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Balt. & Ohio R. R. v. Int. Com. Comm., 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878 (1911). Such records assume the characteristic of quasi-public documents and their disclosure may be compelled without violating the Fourth Amendment. Bowles v. Glick Bros. Lumber Co., 146 F.2d 566 (9th Cir.), cert. denied, 326 U.S. 804, 66 S.Ct. 12, 90 L.Ed. 490 (1945); Rodgers v. United States, 138 F.2d 992 (6th Cir. 1943); United States v. Pine Valley Poultry Distributors Corp., 187 F.Supp. 455 (S.D. N.Y.1960). In Boyd v. United States, 116 U.S. 616, 624, 6 S.Ct. 524, 528, 29 L. Ed. 746 (1886) the Supreme Court recognized that books required to be kept by manufacturers for inspection by revenue officers "are necessarily excepted out of the category of unreasonable searches and seizures." And in Hale v. Henkel, 201 U.S. 43, 77, 26 S.Ct. 370, 380, 50 L.Ed. 652 (1906), the Court, although finding an order for the production of certain corporate books and papers too broad and indefinite, stated: "Of course, in view of the power of Congress over interstate commerce, to which we have adverted, we do not wish to be understood as holding that an examination of the books of a corporation, if duly authorized by act of Congress, would constitute an unreasonable search and seizure within the 4th Amendment."

Section 320(d) was examined by the district court in United States v. Ala-

---

1. 49 C.F.R. §§ 117.1 and 203 (1961).

bama Highway Express, 46 F.Supp. 450 (N.D.Ala.1942) and was found to be constitutional within the meaning of the Fourth Amendment. A similar section, 49 U.S.C. § 20(5), was upheld in United States v. Clyde S.S. Co., 36 F.2d 691 (2d Cir. 1929). In the former case the court denied the defendant-carrier's motion to suppress as evidence records and documents "obtained by virtue of the unlawful and unreasonable search of all accounts, records, books, memoranda, correspondence and other documents" by Commission agents. It found the federally regulated motor carriers to be "subject to the highest degree of accountability to the public, the public being represented by the administrative agency charged with supervision of their business, in this case the Interstate Commerce Commission. This accountability naturally allows the motor carrier less protection and privacy than the ordinary citizen enjoys in his private business." Id., 46 F.Supp. at 453.

█ The statute in question grants the Commission a broad power of inspection commensurate with its broad power of regulation of carriers engaged in interstate commerce. It could not properly perform its duties if the regulated party had the right to say just how far an examination could go. United States v. Clyde S.S. Co., supra. The Commission itself is limited by the standard of reasonableness. The inspection must be related to the Commission's function as a regulator of motor carriers in interstate commerce. Of course "[i]n view of the broad power of regulation of in-

terstate public carriers, it is difficult to conceive of a case in which the Interstate Commerce Commission would be seeking to inspect a record or document which would not be relevant to a lawful activity of the Commission. We assume, however, that if such a case were presented, the right to require production of a record or document would be denied." Fleming v. Montgomery Ward & Co., 114 F.2d 384, 391 (7th Cir.), cert. denied, 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446 (1940).

█ Such a case is not presented here. The records demanded of appellant were those the Commission was authorized to require carriers to keep and preserve. 49 U.S.C. § 304(a)(2). Regulations requiring the keeping of these records and documents were published in the Code of Federal Regulations.[2] It is not contended that any other matter, such as confidential correspondence between appellant and its attorney, was requested. Agent Shea's arrogant attempt to improperly extend the scope of the inspection and examination was disavowed by the Commission. Under the circumstances, therefore, the Commission's proper and reasonable demand to inspect appellant's premises and equipment and to examine and copy the aforementioned records and documents should not have been refused. The lower court was correct in granting the preliminary injunction in this case in order to ensure appellant's compliance with the statute and regulations.

Judgment will be entered affirming the judgment of the district court.

2. (a) Driver's daily log,
   (b) Reports, manifests, etc.,
   (c) Dispatchers' sheets, etc.,
   (d) Equipment leases, etc.,
   (e) Delivery receipt, etc.,
   (f) General and auxiliary ledgers, etc.

49 C.F.R. 195.8
49 C.F.R. 203.307 Item 57(b)
49 C.F.R. 203.307 " 55(a)
49 C.F.R. 203.307 " 12(b)
49 C.F.R. 203.307 " 50(b)
49 C.F.R. 203.1(a) (1)