**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,**

v.

**Erling C. OLSEN d/b/a Fitch Investors Service, Defendant-Appellant.**

**No. 157, Docket 29866.**

United States Court of Appeals Second Circuit.

Argued Nov. 10, 1965.

Decided Dec. 17, 1965.

Walter P. North, Associate Gen. Counsel, S.E.C., Washington, D. C. (Philip A. Loomis, Jr., Gen. Counsel, Roy Nerenberg, S.E.C., Washington, D. C., on the brief), for plaintiff-appellee.

Robert J. Ward, New York City (Robert Roy Dann, William M. Kaplan, Victor M. Rosenzweig, Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

LUMBARD, Chief Judge:

Erling C. Olsen appeals from a judgment of the Southern District of New York holding him in civil contempt for refusing to produce records demanded by the Securities and Exchange Commission. Olsen contends his refusal was justified

because production would have violated the Fifth Amendment privilege against compelled self-incrimination and the Fourth Amendment prohibition against unreasonable searches and seizures. We hold his refusal to produce the records was not justifiable on any ground and affirm the judgment of contempt.

Olsen is an investment advisor, doing business as Fitch Investors Service, and registered under the Investment Advisers Act of 1940, 15 U.S.C.A. § 80b–1 et seq. According to the Commission, although he maintained a number of investment supervisory accounts with discretionary power to buy and sell for clients and also had custody of clients' funds and securities, Olsen never disclosed this information in any registration statements or reports filed with the Commission; he fraudulently failed to follow clients' instructions; he sent clients false statements; and he refused to deliver funds or securities to clients except after repeated delays. No independent accountant's certificates have ever been filed regarding the clients' funds as required by the Commission's rules. These practices would constitute violations of the Investment Advisers Act and the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j.

Pursuant to an investigation into Olsen's activities the S. E. C. sought to inspect the extensive business records which investment advisors are required to keep and make available for examination.[1] After a series of delays, postponements, claims of illness and other excuses by Olsen extending from June 19, 1964, the S. E. C. sought a mandatory injunction compelling the production at its New York office of all the papers and records required to be maintained under its regulations. Judge Tyler signed such an order on June 11, 1965. 243 F.Supp. 338 (D.C.N.Y.). This court refused a stay, as did Mr. Justice Harlan. A supplemental order by the district court set July 28, 1965 as the time for production. At the hearing Olsen refused to furnish the records, claiming they might tend to incriminate him and that he could not be compelled under the Fifth Amendment to produce unless he was assured of complete immunity from prosecution. This contention was again urged before Judge Wyatt who rejected it and adjudged Olsen in contempt on September 20, 1965.

█ In light of the immunity provisions contained in the Investment Advisers Act,[2] we believe the Fifth Amendment privilege cannot be invoked to withhold the records from the agency but can only be raised as a bar to a criminal prosecution if any is ever brought.

█ The immunity clause, which is virtually identical to that in the Securities Exchange Act, 15 U.S.C.A. § 78u(d) and many other regulatory statutes,[3] automatically confers immunity from the use of any privileged evidence produced after a proper claim. The purpose is to enable the administrative agencies to obtain information essential to the perform-

1. 15 U.S.C.A. § 80b–4, 17 C.F.R. § 275.-204–2. The twenty-eight paragraph regulation covers nearly every business record that would normally be maintained: journals, ledgers, memoranda of orders, bills, checks, internal audit working papers, communications sent and received, etc.

2. 15 U.S.C.A. § 80b–9(d): "No person shall be excused from attending and testifying or from producing books, papers, correspondence, memoranda, contracts, agreements, or other records and documents before the Commission, or in obedience to the subpena [sic] of the Commission or any member thereof or any officer designated by it, or in any cause or proceeding instituted by the Commission, on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled to testify or produce evidence, documentary or otherwise, after having claimed his privilege against self-incrimination, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying."

3. A listing of Federal Witness Immunity Acts will be found in Comment, 72 Yale L.J. 1568, 1611–1612 (1963).

ance of their regulatory duties which they could not otherwise compel, and to do so without protracted litigation.[4]

Immunity statutes with a protective scope similar to the one in question here have been consistently upheld as constitutional, Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511, 53 A.L.R.2d 1008 (1956), as they confer a protection against the use of testimony and evidence which is as broad as the underlying privilege. Cf. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); Albertson v. Subversive Activities Control Board, 86 S.Ct. 194 (1965).

■ The protection offered, however, need not extend beyond what would be otherwise privileged. In Mr. Justice Holmes' phrase, to extend it further would be to unnecessarily offer "a gratuity for crime." Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450 (1913). In United States v. Shapiro, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), this reasoning was applied to allow prosecution based on "public records" required to be kept under OPA regulation which had been subpoenaed, the court holding that such records were not within the privilege.

Olsen argues that the number and kind of the records which the S. E. C. requires be kept by its regulations is so great that it wipes out the immunity which Congress meant to grant and destroys the privilege. He urges that Shapiro, which dealt with more limited records in a wartime emergency situation, is either inapplicable or should be reconsidered.

We express no opinion whether the "public records" exception would cover all the documents required to be kept under the Commission's regulations because we think the proper time to examine the scope of the Shapiro doctrine is when a prosecution is brought which is based on those records. Determination of the scope of the exception now would be premature and would unnecessarily hamper the investigative efforts of the S. E. C. No interest of Olsen is prejudiced by this procedure: if the exception to the privilege carved out by Shapiro does not apply he will be fully protected by the immunity statute; if the records do fall within the exception he has no privilege to withhold them.

■■ Olsen contends that prior cases justify his demand for a declaration of immunity from prosecution before turning over his records. But these cases do not involve a comprehensive immunity statute. Where the privilege exists, and no immunity statute protects the witness, any compulsion may be resisted at that time rather than risk prosecution. McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); Albertson v. The Subversive Activities Control Board, supra. Similarly, where the statutory scheme requires an administrative or judicial grant of immunity before a witness is protected, in the absence of such a grant the witness can stand upon his refusal. See 18 U.S.C.A. §§ 1406, 3486. But here no substantial question can exist that the immunity automatically attaches and is as broad as the underlying privilege. Sound administrative practice counsels that litigation of that issue should not impede the Commission's authorized investigations.[5]

■ Olsen also argues that the statutory immunity does not protect him from state prosecution. But the statute is coterminous with the privilege being protected and clearly would protect Olsen from the use of the evidence in a state court as much as in a federal court. Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); Adams v. State of Maryland, 347

---

4. See Comment, 72 Yale L.J. 1568 (1963).

5. Although in Wirtz v. Robb, 346 F.2d 192, 193 (6 Cir. 1965), "respondents were assured that a grant of immunity would flow coextensive with their individual testimony" there is nothing to indicate that the court thought such a declaration necessary, and because it involved oral testimony and not the production of records required to be kept the scope of the immunity was not in question.

U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954); United States v. Coplon, 339 F.2d 192 (6 Cir. 1964). If, as appellant claims, New York does not follow the federal rule that "required records" can be demanded without a promise of immunity that is not a source of danger of prosecution but an additional protection to him.

The appellant also challenges the court order as an unreasonable search and seizure because it is so broad as to constitute an exploratory search of his records. But where all the records pertain to the investment business and are clearly relevant to the Commission's regulatory task in the securities industry the order is not, in the absence of any other circumstances, unreasonable. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531 (1946). The legislative history of the 1960 amendment to the Investment Advisers Act which gave the Commission power to require that records be kept and made available for inspection indicates Congress felt it was necessary for effective regulation in this field. Sen.Rept. No.1760, 86th Cong., 2d Sess., U.S.Code Cong. & Admin.News 1960, p. 3502. Appellant advances no facts or reasons to question that determination.

We agree with what the First Circuit has recently written regarding records similar to these. "Such records assume the characteristic of quasi-public documents and their disclosure may be compelled without violating the Fourth Amendment. Bowles v. Glick Bros. Lumber Co., 146 F.2d 566 (9 Cir.), cert. denied, 326 U.S. 804, 66 S.Ct. 12, 90 L.Ed. 490 (1945); Rodgers v. United States, 138 F.2d 992 (6 Cir. 1943); United States v. Pine Valley Poultry Distributors Corp., 187 F.Supp. 455 (S.D.N.Y. 1960)." Cooper's Express, Inc. v. Interstate Commerce Commission, 330 F.2d 338, 340 (1 Cir. 1964).

The order under attack here is commensurate with the S. E. C.'s broad duties. It does not constitute an unreasonable search.

Judgment affirmed.