**UNITED STATES of America**

v.

**Arnold MAHLER, Michael Light, Norman Babat, Fred Cimino, Michael F. Dermer, Robert Evans, Arthur Kapplow, Alexander Lapidus, Hugh Strump, Broadwall Securities, Inc., and Charters & Co. of Miami, Inc., Defendants.**

**No. 65 Cr. 698.**

United States District Court
S. D. New York.

May 10, 1966.

---

**582**

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for United States of America; Stephen L. Hammerman, Asst. U. S. Atty., of counsel.

M. Arthur Hammer, New York City, for defendants, Light, Dermer, Kapplow, Strump, and Charters & Co. of Miami, Inc.

PALMIERI, District Judge.

This is a motion by defendants Michael F. Dermer, Arthur Kapplow, Michael Light, Hugh Strump, and Charters & Co. of Miami, Inc., pursuant to Fed.R.Crim. P. 41(e) for the suppression of evidence. The indictment charges the defendants with conspiracy to violate the anti-fraud provisions of the Securities Act of 1933, the mail and wire fraud statutes, 18 U.S.C. § 371, and with a scheme to defraud in the sale of securities in violation of § 17 of the Securities Act of 1933. 15 U.S.C. § 77q.

The moving defendants seek to have suppressed as evidence books and records of defendant Charters & Co. of Miami, Inc. (Charters) and "all oral and written evidence obtained" therefrom. The question raised by this motion is the frequently thorny one raised by the existence of parallel civil and criminal investigations and proceedings. The defendants rely expressly on e. g., United States v. Parrott, 248 F.Supp. 196 (D.D.C. 1965); United States v. Lipshitz, 132 F. Supp. 519 (E.D.N.Y.1955).

The defendants allege, in affidavits of defendant Michael F. Dermer and A. Chester Abney, Esq. (counsel to defendants Dermer, Strump, Kapplow, and Charters), that, when the books and records were turned over to the SEC, it was agreed that "they would not be out of the possession of Charters any longer than was absolutely necessary for the then purposes that the SEC Miami branch office needed them." Dermer Affidavit, p. 3.[1] From this allegation, it is argued that the Government has violated the constitutional rights of the defendants—presumably the Fourth Amendment's guarantee against unreasonable searches and seizures. It is urged that the Government obtained the documents by subterfuge which is the equivalent of force.

The Government strenuously denies that an agreement for restricted investigation of the records was reached, and, in fact, the defendants do not contend that any representation with respect to the nature of the investigation was made to them.

What follows is intended to demonstrate that the defendants' motion must be denied.

Charters was registered with the SEC as a broker dealer. As such, it was required to maintain and make available for inspection and examination by the SEC extensive books and records. 15 U.S.C. § 78q(a); 17 C.F.R. 240.17a–3–4. The constitutionality of this requirement is beyond cavil. E. g., Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); SEC v. Olsen, 354 F.2d 166 (2d Cir. 1965); Cooper's Express, Inc. v. ICC, 330 F.2d 338 (1st Cir. 1964); United States v. Pine Valley Poultry Distributors Corp., 187 F.Supp. 455 (S.D.N.Y. 1960). There is no allegation here that the records and documents in question are other than "public records" of the type involved in the *Shapiro* case. Cf. SEC v. Olsen, supra, 330 F.2d at 169. Here, the SEC was conducting an investigation pursuant to provisions of Section 20 of the Securities Act of 1933, 15 U.S.C. § 77t and Section 21 of the Securities Exchange Act of 1934, 15 U.S.C. § 78u.

---

1. Attorney Abney, in his affidavit, when referring to various inspections of Charters' records—both preceding and including the controverted turnovers—states, "These matters were always cleared with your affiant as Legal Counsel."

The pertinent portions of Section 21 of the Exchange Act provide:

(a) The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated or is about to violate any provision of this chapter or any rule or regulation thereunder * * *.

* * * * * *

(e) Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule or any regulation thereunder, it may in its discretion bring an action in the proper district court of the United States * * * to enjoin such acts or practices, and upon the proper showing a permanent or temporary injunction or restraining order should be granted * * *. *The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General,* who may, in his discretion, institute the necessary criminal proceedings under this chapter. 15 U.S.C. § 78u. (Emphasis added.) (Almost the identical provision is found in 15 U.S.C. § 77t (a) and (b))

■■ It is clear that the SEC and the Attorney General possess the authority to conduct civil and criminal investigations of the type undertaken here. The defendants had no privilege to assert with respect to these documents. This was not a case where the defendants were led down the path to perjury, United States v. Thayer, 214 F.Supp. 929, pressed into turning over material, Lord v. Kelley, 223 F.Supp. 684 (D.Mass. 1963),[2] or permitted to testify without counsel and perhaps not warned of their privilege against self-incrimination Cf., United States v. Parrott, supra.

■ The investigators had an absolute right to examine the documents, and they were allowed to do so by the defendants acting voluntarily and on advice of counsel.

The defendants have not asserted that they were assured that there would be no criminal investigation. The thrust of their contentions is simply their claim that they were told the books would not be kept any longer than necessary and, further, that they were not told that the books would be removed from Miami.

In United States v. Sclafani, 265 F.2d 408 (2d Cir.) cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959), an analogous argument was made in a tax case. There, a "routine audit" was undertaken and records were turned over to the Government agent upon his request. Subsequently, a criminal investigator was called in who obtained further evidence from the defendant without apprising him of the new posture of the case.

The Court summarized the defendant's argument as follows:

Sclafani does not deny that all the information he gave to these agents was freely and voluntarily given. He claims, however, that his consent to the searches incident to the investigation was limited to an investigation for "civil" purposes, and that when, without disclosing their altered purpose to him, Agent Sonkin and his superiors brought in a "criminal" investigator, the original consent was exceeded, and the search and seizures were in violation of his rights under the Fourth Amendment. (p. 414.)

The Court rejected the argument, disapproving the cases relied on in United States v. Parrott, supra and in the defendants' brief. The Court stated:

A "routine" tax investigation openly commenced as such is devoid of stealth or deceit because the ordinary taxpayer surely knows that there is inherent in it a warning that the government's agents will pursue evidence of misreporting without regard to the shadowy line between avoidance and evasion, mistake and willful omission.

* * * * * *

---

2. Aff'd sub nom., McGarry's, Inc. v. Rose, 344 F.2d 416 (1st Cir. 1965).

Moreover it is unrealistic to suggest that the government could or should keep a taxpayer advised as to the direction in which its necessarily fluctuating investigations lead. The burden on the government would be impossible to discharge in fact, and would serve no useful purpose.

The Fourth Amendment does not require more than this, that when his consent is sought the taxpayer be apprised of the government's concern with the accuracy of his reports, and therefore of such hazards as may be incident to a voluntary disclosure. We hold that Sclafani was so apprised by the warning inherent in the request when Agent Sonkin identified himself and disclosed his purpose to audit certain returns of the corporation. (265 F.2d pp. 414–415.)

In Lord v. Kelley, supra, the Court found that the Government agent had put unlawful pressures on the accountant into turning over the records. As a result, the agents were, in effect, forced to start over again. Such an approach is not necessary here where the investigators did not use unlawful means to obtain the books and records.[3]

 In any event, it has been held that the Government is not prohibited from using evidence which was once illegally seized if the Government, possessing independent knowledge of the evidence, subsequently obtains it in a legal way. E. g., McGarry's, Inc. v. Rose, supra, 344 F.2d at 419; Wagman v. Arnold, 257 F.2d 272 (2d Cir. 1958); cf., Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426 (1920). This case presents a more compelling factual situation, for not only did the Government have prior knowledge of the records, but the records were required by law to be kept and made available to the SEC for inspection, which, in turn, had statutory authority to turn evidence over to the Attorney General. Moreover, as noted above, the records were not in fact illegally obtained. No coercion was employed, no privacy invaded. The defendants, acting with counsel, knew or should have known that the investigation could lead to indictment. Even assuming *arguendo* that the SEC did violate an agreement with respect to the retention and location of the documents, it did not thereby become a trespasser *ab initio*. Zap v. United States, 328 U.S. 624, 629, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946); Wagman v. Arnold, supra.

Any oral testimony given in this case was given with the assistance of counsel and after the defendants had been warned of their constitutional rights.

The motion to suppress is denied.

It is so ordered.

---

3. Contrast Hinchcliff v. Clarke, 230 F. Supp. 91 (N.D.Ohio 1963), where evidence obtained by an Internal Revenue Service agent in violation of the required procedures was ordered suppressed forever. This decision is currently under appeal. In any event, it is distinguishable from the case at bar inasmuch as here the papers were voluntarily turned over by authorized, counselled persons to authorized agents upon request. There was no invasion here of personal rights.