**UNITED STATES of America,**

v.

**Forrest PARROTT, Donald Parrott, et al.,
Defendants.**

**No. 66 Cr. 243.**

United States District Court,
S. D. New York.

Oct. 8, 1969.

Robert M. Morgenthau, U. S. Atty., S.D.N.Y., New York City, for the United States; Daniel J. Sullivan, Asst. U. S. Atty., of counsel.

Carro, Spanbock & Londin, New York City, for defendant Forrest Parrott; Jerome J. Londin, Allen Green, New York City, of counsel.

Edward R. Cunniffe, Jr., New York City, for defendant Donald Parrott.

## OPINION

EDWARD WEINFELD, District Judge (Orally):

As to pre-indictment delay, the investigation into the alleged criminal aspects of the defendants' activities involved different and additional considerations and problems of evidence from those involved in the civil proceedings. The record discloses that the defendants Forrest Parrott and Donald Parrott engaged in litigious and extensive activities in the civil and administrative proceedings which delayed the investigations. In fact, in August, 1962, they failed to comply with a subpoena in the Raleigh administrative revocation proceeding, which in part involved the Ampet and Petron stock. In May, 1964, they were finally held in contempt for failure to appear, following which, in June, 1964, they appeared, represented by counsel, and were fully advised of their Fifth Amendment right against self-incrimination. It took two and a half years of inquiry and litigation before the SEC succeeded in obtaining, in October, 1964, a final judgment in the Denver action with respect to the sale of the Ampet-Petron stock. While the investigation into the complex affairs of Forrest Parrott and the various enterprises availed of by him in connection with his activities commenced in January or February, 1962, it was not until the end of July, 1963 that the SEC first recommended prosecution to the United States Attorney.

Some slight idea of the problems encountered by the agencies may be gleaned from the reference to the proceedings noted in the opinion of Judge Bonsal dated February 14, 1969, who denied the defendants' motion to dismiss the indictment on various grounds, but without prejudice to renewal upon trial if defendants could show prejudice by reason of the SEC proceedings and the delay in bringing the defendants to trial.

█ After presiding at this three-week trial, during the course of which several thousand pages of testimony were taken, this Court concludes that the claim of prejudicial delay is without substance. The record repels any claim that the return of the indictment by the grand jury in March, 1966 was part of a deliberate, purposeful or oppressive design for delay. United States v. Rivera, 346 F.2d 942 (2d Cir. 1965) (per cur-

iam). See Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). The defendants have not shown that the pre-indictment delay deprived them of their right to a speedy trial and due process; they have not shown that their defense has been impaired or prejudiced by the loss of specific evidence or the testimony of material witnesses. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); United States v. Scully, 415 F.2d 680, (2d Cir., 1969); United States v. Roberts, 408 F.2d 360, 361 (2d Cir. 1969); United States v. Capaldo, 402 F. 2d 821, 823 (2d Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969). The simple fact is that not only did these defendants' activities delay the civil and administrative proceedings, but in the process they had the benefit of the testimony given by the various witnesses in those proceedings.

■ Equally without substance are the defendants' claims with respect to post-indictment delay. After a motion for a bill of particulars and discovery was granted, the case was marked off the calendar on February 20, 1967. This was with the defendants' consent. It was not restored until August, 1968, following which defendants moved to dismiss the indictment for change of venue. The defendants' acquiescence in the various postponements of the trial and their consent to marking the case off the calendar forecloses any constitutional claim under the Sixth Amendment under the rule applied in this Circuit in United States v. Lustman, 258 F.2d 475 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), and more recently reiterated in the face of a strong plea for its relaxation, United States v. Maxwell, 383 F.2d 437 (2d Cir. 1967), cert. denied, 389 U.S. 1057, 88 S. Ct. 809, 19 L.Ed.2d 856 (1968), cert. denied sub nom. Aiken v. United States, 389 U.S. 1043, 88 S.Ct. 786, 19 L.Ed.2d 835 (1968). See also United States v. Roberts, 408 F.2d 360, 361 (2d Cir. 1969) (per curiam).

■ Also, considering defendants' motion as one based upon a constitutional claim of denial of due process under the Fifth Amendment or under Rule 48(b) of the Federal Rules of Criminal Procedure, there is no basis for relief. The alleged deprivation of witnesses' testimony by reason of death is highly exaggerated and the trial itself reveals what little substance there is to the claim. One purported witness, Baldwin Bane, a former attorney of Forrest Parrott, died in May, 1962, when the investigation was in its initial stages and long before the SEC's recommendation in July, 1963 for criminal prosecution was forwarded to the United States Attorney. S. F. Peavey, Jr., another defendant's attorney, according to trial testimony had a stroke in the beginning of 1961 and ceased to function as a lawyer at that time. He was in the hospital from six to eight weeks prior to April, 1961. He died in March, 1963, five months before the SEC reference to the United States Attorney. In the interim there was much activity in the civil proceedings and if the defendant deemed Peavey's testimony of importance, his deposition could have been taken. Moreover, all of Peavey's records under this Court's order were made available to the defendants for inspection and discovery, as were all the records obtained from Bane.

As to Fred Erdman, who died in November, 1965, assuming his testimony was competent or relevant on the issue of defendants' intent, his testimony was taken in the civil suit related to the issues in this trial. His deposition in that proceeding was taken upon notice to the defendants who were parties in the litigation; the government expressly consented to its use by the defendants at this trial. They chose not to offer any of Erdman's testimony. In addition, Forrest Parrott, in his current affidavit, admits he discussed with Erdman obtaining an additional deposition, but failed to take any action thereon.

With respect to the alleged nature of the testimony of these witnesses on the

issue of intent, as well as on other matters, the trial record indicates Forrest Parrott was given wide latitude when he testified—much more than was required. The defendants name other witnesses who allegedly would have given testimony, but entirely apart from the patently hearsay nature of the purported testimony, it is clear that none of those alleged witnesses could have offered probative evidence to support the defense to the charge that one of the objects of the conspiracy was the fraudulent sale of Petron stock.

Finally, and most significantly, the case in very large measure rested upon documentary material available to the defense as well as to the prosecution—see United States v. Kane, 243 F.Supp. 746, 754 (S.D.N.Y.1965)—records which were at all times known to the defendants and examined by them on numerous occasions prior to trial. Moreover, Forrest Parrott, who testified at length and produced additional documents, clearly showed no loss of memory or recall on significant matters.

■ The defendants' challenge to the judgment of conviction, based upon the civil and administrative proceedings, insofar as they centered about the same matters involved in this proceeding, is without substance. The defendants, as they acknowledge in their affidavits submitted on this motion, not only were advised as to their constitutional right against self-incrimination before testifying, but both were represented by counsel. Their contention, as this Court observed during the argument here today, that any representation was made with respect to future criminal proceedings distorts the record, as Judge Bonsal pointed out in his opinion dated February 14, 1969. There is not the slightest basis for any claim of any representation to these defendants with respect to nonprosecution for their unlawful activities.

■ Neither is there any basis for the charge that the civil or administrative proceedings were instituted for an improper purpose, or to deprive them of their rights, or to aid in any criminal proceeding that might be indicated as a result of continued investigation. The Securities and Exchange Commission, where it believes the Securities Acts are being violated, is authorized, and indeed would be derelict if it failed, to investigate and to bring civil suit to enjoin alleged illicit activities. Securities Act of 1933, section 20, 15 U.S.C., section 77t; Securities Exchange Act of 1934, section 21, 15 U.S.C. section 78u. The commencement of such proceedings, however, does not automatically immunize from criminal prosecution those who may be civilly restrained if the charged conduct also violates the criminal statutes.

■ This is not a case where defendants, while civil proceedings were going forward, were without knowledge that criminal charges might result as evidence was unearthed. The civil suit to enjoin the defendants' alleged violations of the Securities Acts was ample notice that their conduct, the continuance of which was sought to be enjoined, may well have run afoul of the criminal laws as well. This was emphasized by the warnings given them of their constitutional rights in the civil and the administrative proceedings. There was no duty upon the government, once having advised the defendants of their right against self-incrimination, to warn them that as the investigation proceeded it might warrant presentation to a grand jury and prosecution upon criminal charges. As our Court of Appeals stated in a parallel situation in United States v. Sclafani, 265 F.2d 408, 415 (2d Cir.), cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959):

"A 'routine' tax investigation openly commenced as such is devoid of stealth or deceit because the ordinary taxpayer surely knows that there is inherent in it a warning that the government's agents will pursue evidence of misreporting without regard to the shadowy line between avoidance and evasion, mistake and willful omission.

\*   \*   \*   \*   \*   \*

"Moreover it is unrealistic to suggest that the government could or should keep a taxpayer advised as to the direction in which its necessarily fluctuating investigations lead. The burden on the government would be impossible to discharge in fact, and would serve no useful purpose."

See also United States v. Squeri, 398 F. 2d 785, 789 (2d Cir. 1968).

Insofar as the defendants rely on United States v. Parrott, 248 F.Supp. 196 (D.D.C.1965) to support their position, as has already been pointed out and as noted during this argument, our Court of Appeals has not accepted the cases upon which the District Court of Columbia relied. See United States v. Mahler, 254 F.Supp. 581, 583 (S.D.N.Y. 1966).

■ The fact that witnesses upon this trial were shown their statements or testimony given in prior civil proceedings in no respect violated the rights of the defendants. Indeed, it would have been rather unusual if lawyers, in preparing for trial, did not make such material available to witnesses.

■ The eleventh hour motion based upon Brehmer's application to withdraw his guilty plea, made by him three and one-half years after the entry of his plea and only after these defendants were convicted, in this Court's view is as frivolous as was Brehmer's motion. Just how the prosecution could have divined that Brehmer would have made such a groundless motion, as this Court found it to be in rejecting it (see memorandum dated September 24, 1959), is not clear. The defendants here are no more entitled to a hearing on his spurious claim than he was.

Equally groundless are the defendants' motions for a new trial based on Brehmer's testimony as to when the stock transfer records were taken over. Counsel, of course, had full opportunity to cross-examine the witness, and the exhibits on this issue received in evidence were available to the defendants and their counsel, who examined them. There is no showing that Brehmer's testimony was not the truth.

Insofar as further motions are made with respect to alleged errors during the trial and alleged erroneous instructions to the jury, they likewise are denied.